Christopher **COMEAUX**, Appellant,

v.

Adolf D. **SUDERMAN**, III a/k/a Adolf Suderman III and Margaret J. Suderman a/k/a Jane Suderman, Individually and d/b/a Bolivar Properties, Mark D. Meier and Mark J. Meier, Individually and d/b/a Coastal Ventures, Appellees.

No. 14–01–00516–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 18, 2002.

Kenneth C. Kaye, League City, for appellant.

Andrew J. Mytelka, Michael David Leblanc, Galveston, for appellees.

Panel consists of Justices HUDSON, FOWLER, and EDELMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant Christopher Comeaux appeals from a summary judgment in favor of appellees on his claims for specific performance or damages arising out of an alleged breach of a right of first refusal contained in a lease agreement. We affirm the judgment of the trial court.

## BACKGROUND

In May of 1988, Comeaux leased from the Sudermans[1] slightly less than one acre of land on the Bolivar Peninsula in Galveston County. He used this property in connection with the operation of a public fishing pier.

The lease provided that, in the event Suderman received a proposal to sell the leased premises, the sale was subject to Comeaux's right of first refusal to purchase the property. Comeaux's purchase would be on the same terms and conditions as those offered by the prospective purchaser:

### XIV.
### LESSOR'S OPTION TO CANCEL IN THE EVENT OF SALE

In the event of a proposed sale of the entire leased premises to a third party, Lessor shall have the right to terminate this lease as of the effective date of the sale of the leased premises to a third party, SUBJECT HOWEVER, to Lessee's right of first refusal as provided in Article XV below.

### XV.
### LESSEE'S OPTION TO PURCHASE PRIOR TO LESSOR'S EXERCISE OF RIGHT OF CANCELLATION

Lessor shall notify Lessee in writing of the true and complete terms and conditions of any proposed sale to a third party at least ninety (90) days prior to the date of closing of such proposed sale, and Lessee shall have the option, for a period of thirty (30) days from and after the receipt of said notice, to purchase the leased premises upon the same terms and conditions, by tendering the full amount of the proposed purchase price to Lessor.

On March 30, 1997, Adolph Suderman notified Comeaux in writing of a pending $350,000 cash offer for the leased premises and some adjoining property to the east and west of the leased premises. Suderman's notice did not specify that the total acreage to be sold was thirty-five acres. No other terms were provided, and no copy of an earnest money contract was provided. In the notice, Suderman reminded Comeaux of his right of first refusal under the lease agreement and the requirement that he exercise his right within

---

1. Specifically, the parties to the contract were Comeaux, Adolph D. Suderman, III and Margaret Jane Suderman individually and doing business as Bolivar Properties.

thirty days. Suderman also provided his telephone number and that of his real estate agent, George Liberato, in the event Comeaux wanted to discuss the purchase.

Comeaux received the notice and contacted Liberato. Comeaux apparently assumed that the sale involved twenty-two acres surrounding his property, but did not ask Liberato to provide him with the specific terms and conditions of the sale, and did not inquire into whether he could purchase only the leased premises. Comeaux informed Liberato that he would not exercise his option because he could not afford $350,000. Comeaux had no further discussions regarding the proposed sale with either Liberato or Suderman.

Later, in June of 1997, Suderman sold the property to appellees Mark D. Meier and Mark J. Meier, doing business as Coastal Ventures. Comeaux then began paying rent to the Meiers. During the time Comeaux continued to occupy the leased premises, he never complained to either Suderman or the Meiers that he had been wrongfully denied the opportunity to purchase the leased premises. Comeaux ultimately abandoned the leased premises when a storm destroyed his fishing pier in the fall of 1998.

Comeaux subsequently filed suit against appellees, asserting that he was entitled to either specific performance or damages because appellees failed to comply with the terms of the right of first refusal in the lease agreement and tortiously interfered with Comeaux's contractual right to exercise the right of first refusal. Appellees moved for summary judgment on the grounds that the proposed sale was not for the leased premises only, Comeaux failed to tender an offer to purchase the leased premises, and the Meiers did not tortiously interfere with the lease agreement; appellees also asserted affirmative defenses of laches and unclean hands. The trial court granted summary judgment in favor of appellees on Comeaux's claims without specifying the grounds relied upon. Comeaux appeals from that summary judgment.

## DISCUSSION

### 1. Standard of Review

When reviewing a summary judgment, we apply the following well-established rules:

(1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

(2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and

(3) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant.

*American Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

When the defendant moves for summary judgment, the motion is properly granted only if the plaintiff cannot, as a matter of law, succeed upon any theory pleaded. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). A defendant's motion for summary judgment should be granted if he disproves at least one essential element of each of the plaintiff's causes of action, or if he establishes all the elements of an affirmative defense as a matter of law. *Grinnell,* 951 S.W.2d at 425. Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the nonmovant to offer any issue or evidence that would preclude summary judgment.

*City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

■ If a summary judgment is granted generally, without specifying the reason, it will be upheld if any ground in the motion for summary judgment can be sustained. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 127 (Tex.App.-Houston [14th Dist.] 1995, no writ).

### 2. Analysis of Issues on Appeal

On appeal, Comeaux asserts that the trial court erred in granting summary judgment for the following reasons: (1) he was never given notice that he could buy just the leased premises; (2) he was never given the opportunity to purchase just the leased premises; (3) the notice he received from Suderman did not comply with the terms of the lease agreement because it did not reveal all of the terms and conditions of the sale and it was received less than ninety days before the proposed closing date; (4) he was entitled to either specific performance or damages; and (5) the appellees did not meet their summary judgment burden with regard to their affirmative defenses. In response, the appellees contend that Suderman was not required to give Comeaux notice or an opportunity to purchase the leased premises because the sale was for more than just the leased premises. Further, appellees urge, the notice Comeaux received sufficiently conveyed the terms of the sale, and Comeaux declined to exercise his right of first refusal within the thirty-day period provided in the lease agreement. Additionally, appellees argue that Comeaux's claims were barred by the affirmative defenses of waiver, laches, and unclean hands.

We begin with Comeaux's first three issues, all of which relate to the sufficiency of the notice he received. Comeaux claims that because the written notice he received

failed to offer him the opportunity to purchase the leased premises only (rather than the entire thirty-five acre parcel) and did not strictly comply with paragraph XV of the lease agreement, the right of first refusal was never triggered. However, it is undisputed that Comeaux received notice of the proposed sale, and had an opportunity to obtain all the terms and conditions of the proposed sale and assert his rights. As we explain below, the record shows that Comeaux affirmatively declined to exercise the right of first refusal. We hold that appellees are not liable to Comeaux for breach of contract and tortious interference with his contractual rights.

#### a. *The right of first refusal*

■ A right of first refusal, as a preemptive right, requires the property owner to first offer the property to the person holding the right of first refusal at the stipulated price and terms in the event the owner decides to sell the property. *Riley v. Campeau Homes (Texas), Inc.*, 808 S.W.2d 184, 187 (Tex.App.-Houston [14th Dist.] 1991, writ dism'd by agmt.); *Holland v. Fleming*, 728 S.W.2d 820, 822 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.). Unlike an option contract, a right of first refusal does not give the lessee the power to compel an unwilling owner to sell. *Riley*, 808 S.W.2d at 187; *Sanchez v. Dickinson*, 551 S.W.2d 481, 484 (Tex.Civ.App.-San Antonio 1977, no writ). However, once an owner decides to sell, there is an obligation to offer the holder of the right of first refusal the opportunity to buy the property on the terms offered by a bona fide purchaser. *Riley*, 808 S.W.2d at 187; *Sanchez*, 551 S.W.2d at 486.

■ When one acquires an option to purchase property, the holder of the option purchases the right to compel a sale of property on the stated terms before the

expiration of the option. *Riley,* 808 S.W.2d at 188; *White v. Miller,* 518 S.W.2d 383, 385 (Tex.Civ.App.-Tyler 1974, writ dism'd). Option contracts have two components: (1) an underlying contract that is not binding until accepted; and (2) a covenant to hold open to the optionee the opportunity to accept. *Riley,* 808 S.W.2d at 188; *Hott v. Pearcy/Christon, Inc.,* 663 S.W.2d 851, 853 (Tex.App.Dallas 1983, writ ref'd n.r.e.).

■ A right of first refusal ripens into an option when the owner elects to sell. *Riley,* 808 S.W.2d at 188; *Holland,* 728 S.W.2d at 822; *Sanchez,* 551 S.W.2d at 484. When an owner is required to notify the holder of a right of first refusal of the owner's election to sell, the right matures into an enforceable option when the owner gives the notice. *Riley,* 808 S.W.2d at 188; *Holland,* 728 S.W.2d at 822–23.

■ Before the option can ripen into an enforceable contract of sale, however, the holder of the option must manifest his acceptance. *Miller,* 518 S.W.2d at 385; *Hutcherson v. Cronin,* 426 S.W.2d 638, 641 (Tex.Civ.App.-Tyler 1968, no writ). Acceptance of an option must be unqualified, unambiguous, and strictly in accordance with the terms of the agreement. *Crown Constr. Co., Inc. v. Huddleston,* 961 S.W.2d 552, 558 (Tex.App.-San Antonio 1997, no writ). If an option contract requires the option holder to give notice of his intent to exercise the option, he must timely give this notice; the failure to give it on time is fatal. *Miller,* 518 S.W.2d at 386; *Ducc Realty Co. v. Cox,* 356 S.W.2d 807, 809 (Tex.Civ.App.-Waco 1962, no writ). Accordingly, a failure to exercise an option according to its terms, including untimely or defective acceptance, is simply ineffectual, and legally amounts to nothing more than a rejection. *Crown Constr. Co.,* 961 S.W.2d at 558. If the lessee declines to purchase the property, the owner may sell to anyone. *Riley,* 808 S.W.2d at 187.

### b. *Notice and opportunity to purchase*

■ With these principles in mind, we turn to the facts of the present case. Comeaux admits that he received Suderman's March 30, 1997 written notice of the proposed sale of the leased premises and the additional property adjoining the leased premises. Comeaux also admits that he spoke at some point thereafter to George Liberato, Suderman's real estate agent, regarding the proposed sale. Although it is unclear whether the discussion between Comeaux and Liberato took place before the expiration of the thirty-day period provided in the lease agreement for exercising the right of first refusal, it is undisputed that Comeaux told Liberato that he could not afford to match the Meiers' offer of $350,000.

At no time during Comeaux's discussion did he inquire into any of the specifics of the terms and conditions of the sale or contend that the notice was insufficient. Further, he did not assert that he was entitled to purchase only the leased premises, and he did not inquire into the possibility of doing so. In fact, prior to the completion of the sale to the Meiers, Comeaux admittedly failed to assert the right he now claims:

Q: At any time prior to the sale, which I will represent to you was in June of 1997, did you at any time contact either Mr. Liberato, Don Suderman, or Margaret Suderman and suggest to them that you were entitled to purchase only the leased portion of the premises?

A: No, Sir.

Q: Why didn't you do that?

A: Why didn't I do that? Well, I don't know. The land had been supposedly sold about three or four times

since I was leasing it, the land around me; and it never did go through. So I really wasn't worried about it. That's probably why.

Comeaux's indifference to his rights and his acquiescence to the sale without further inquiry is evident from this exchange. Nevertheless, Comeaux stresses that, because Suderman's notice did not include an offer to sell only the leased premises and did not strictly comply with the terms of the lease agreement, the right of first refusal was not triggered.[2] Comeaux also contends that Mark D. Meier admitted that Suderman's written notice did not provide all the terms and conditions of the earnest money contract.

■ However, we need not address whether Comeaux should have been offered the opportunity to purchase only the leased premises, and whether the notice was technically insufficient, because Comeaux had actual notice of the proposed sale of the leased premises and an opportunity to purchase it, which he declined.[3] Here, Suderman prepared written notice to Comeaux informing him of a pending sale of the leased premises and adjoining property for $350,000. Suderman also reminded Comeaux of his right of first refusal, and invited him to contact either Suderman or George Liberato, Suderman's real estate agent, to discuss the matter further.

■ We find that Suderman's notice to Comeaux, while not a model of clarity, reasonably disclosed Suderman's intention to sell the leased premises and additional property to a third party for a total price of $350,000. When an owner makes a reasonable disclosure of the terms of a proposed sale to another, the holder of the right of first refusal has a duty to undertake a reasonable investigation of any terms unclear to him. *Koch Indus., Inc. v. Sun Co., Inc.*, 918 F.2d 1203, 1212 (5th Cir.1990). A right holder who fails to do so cannot subsequently complain that he lacked sufficient information to make an informed choice about whether to purchase the property that is subject to the right of first refusal. *Id.*

Here, it is undisputed that Comeaux received the notice and discussed the pro-

---

**2.** Comeaux also contends that the notice was ineffective because (1) it did not inform him that the proposed sale was for thirty-five acres, (2) it did not specifically identify the acreage, and (3) it did not inform him of a provision in the earnest money contract providing that, in the event the purchaser was unable to obtain financing for the purchase within a specified time, the purchaser agreed to proceed with the purchase of one of the two tracts, which included the leased premises, for $125,000, and would obtain a right of first refusal on the remaining tract for one year at a price of $225,000. Indeed, it is Comeaux's position that in order to satisfy the "full and complete terms and conditions" language of the lease agreement, the notice should have included a copy of the earnest money contract. However, Comeaux does not explain how this additional information would have affected his decision-making process, since he does not contend that he was entitled to purchase the entire thirty-five acre

parcel or the tract containing the leased premises. Indeed, he had no right or obligation under the right of first refusal to purchase more than the leased premises. *See Hinds v. Madison*, 424 S.W.2d 61, 64 (Tex. Civ.App.-San Antonio 1967, writ ref'd n.r.e.) ("We do not see how in any way lessee's option or preference right to purchase a portion of the property sought to be sold can be enlarged to cover other lands owned by lessors, or can in any manner cover anything except the property actually subject to the option.").

**3.** Although it is unnecessary to the disposition of this case, we disagree with appellees' contention that they were not required to give any notice because the sale was for more than the leased premises. A seller who has given a holder a preemptive right cannot defeat that right by selling the subject matter of that right as part of a larger transaction. *See Riley*, 808 S.W.2d at 189.

posed sale with Liberato. At that time, Comeaux had an opportunity to learn the complete terms and conditions of the proposed sale to the Meiers and to assert his right to purchase the leased premises, but failed to do so. Comeaux instead declined to assert his right to purchase the lease premises. Comeaux does not contend that appellees deceived him or prevented him from obtaining more information. In fact, he testified in deposition that he was made aware of the terms and conditions of the proposed sale. The only explanation Comeaux gave for his indifference to his rights is that, based on past experience, he did not think the sale would go through. Further, Comeaux's subsequent conduct in acquiescing to the sale and paying rent to the Meiers was inconsistent with an intention to purchase the property. Given these facts, we cannot agree with Comeaux that he was not given a reasonable opportunity to purchase only the leased premises.

A similar conclusion was reached in *Mecom v. Gallagher*, 213 S.W.2d 304 (Tex.Civ. App.-El Paso 1947, no writ), which also involved an allegation by the holder of a right of first refusal that the seller's notice was insufficient under the terms of the lease agreement. In that case, the lessee, Mecom, was given written notice of a proposed sale of the leased premises, and he discussed the terms and conditions of the sale with the seller's representatives before declining to purchase on the same terms as the potential purchaser. *Id.* at 306. In its main opinion, the court of appeals rejected Mecom's argument that the notice omitted certain terms required by the lease agreement, reasoning that "[t]o hold in this case the notice is insufficient under the plain terms of the contract and the facts and circumstances of the case would be to turn aside from the horse sense applications of law, which characterize the body of the law as a whole, and

indulge in pure technicalities." *Id.* at 306–07. On rehearing, the court stressed that the notice requirement was merely incidental to the primary and controlling provision of the right of first refusal, which was the opportunity to buy the property on the same terms and conditions as the owners would sell to a prospective purchaser. *Id.* at 310–11. The court further stated that in those circumstances "notice could have served no purpose, had he had none, when he declined to exercise his option when given the opportunity." *Id.* at 311–12.

Likewise, because Comeaux received notice and was given the opportunity to exercise his right of first refusal, technical deficiencies in the notice—or even no notice—cannot revive the right he declined. We recognize that *Mecom* is distinguishable because in that case the lessee availed himself of the opportunity to obtain the complete terms and conditions of the proposed sale, and the subject property was not part of a sale of a larger tract. However, we do not think these distinctions are significant to the resolution of the dispute here.

Although Comeaux relies heavily on this Court's opinion in *Riley v. Campeau Homes*, we find that case distinguishable. In *Riley,* the owner of a number of condominium units in a residential high rise entered into an agreement to sell all the units it owned in the building. *Riley,* 808 S.W.2d at 185. The owner, in accordance with the terms of a lease of one of the units, notified the lessee of the proposed sale and the lessee's right of first refusal to purchase the leased unit. *Id.* at 186. In response, the lessee took affirmative steps to exercise its option by depositing money in escrow and returning a sales contract to purchase the unit. *Id.* at 188–89. The owner subsequently notified the lessee that it had no intention of selling the unit to the lessee separately from the sale

of its other properties to the third party. *Id.* at 186. The court of appeals held that, under these facts, summary judgment for the owner was improper. *Id.* at 189. Unlike the lessee in *Riley,* Comeaux made no effort to exercise his option following his receipt of Suderman's notice of the proposed sale and Comeaux's right of first refusal, and ultimately declined any opportunity to purchase the leased premises. Consequently, whether the Sudermans breached the lease agreement with Comeaux by refusing to sell the leased premises to him is not at issue as it was in *Riley.*

Comeaux also cites several cases in support of his conclusion that the holder of a right of first refusal is not required to do anything until the owner of the property conveys the full and complete terms of the purchase offer to him. *See Gochman v. Draper,* 389 S.W.2d 571, 579 (Tex.Civ. App.-Austin 1965), *rev'd on other grounds,* 400 S.W.2d 545 (Tex.1966); *Estes v. Wilson,* 682 S.W.2d 711, 716 (Tex.App.-Fort Worth 1984, writ ref'd n.r.e.); *Miller v. Compton,* 185 S.W.2d 754, 756 (Tex.Civ. App.-Eastland 1945, no writ). We find these cases either distinguishable or wholly inapplicable. In *Draper,* the holder of the right of first refusal was given no notice whatsoever and had no knowledge of the sale of the leased premises. *Draper,* 389 S.W.2d at 579. In *Estes v. Wilson,* which involved neither a right of first refusal nor insufficient notice, the court held that a lessee was not entitled to exercise a purchase option contained in a lease-purchase agreement when he forfeited his interest in the agreement by failing to comply with provisions obligating him to pay taxes, retain the same insurance with the same insurance carrier, and not sublease

the property without consent. *Estes,* 682 S.W.2d at 714–16. In the third case, *Miller v. Compton,* the lessee was not even attempting to exercise the right of first refusal contained in his lease agreement, but was seeking to avoid liability for unpaid rent by arguing, unsuccessfully, that his obligation to pay terminated with an undisclosed transfer of the property to the owner's father. *Miller,* 185 S.W.2d at 756, 758. We find none of these cases instructive under the present facts.

### 3. Holdings

We hold that once Comeaux affirmatively declined to exercise his right after receiving notice and an opportunity to assert his right to purchase the leased premises, the option expired. *See Mecom,* 213 S.W.2d at 311; *Koch,* 918 F.2d at 1213. Because the option expired, the Sudermans were free to sell to the Meiers, and therefore the Sudermans could not have breached the lease agreement, and the Meiers could not have tortiously interfered with the right of first refusal by purchasing the property. *See Riley,* 808 S.W.2d at 187.[4]

Comeaux's first three issues are therefore overruled, and we need not address Comeaux's fourth issue, in which he asserts that he is entitled to alternative relief of specific performance or damages, or his fifth issue, in which he contends that appellees did not meet their summary judgment burden with regard to their affirmative defenses.

The judgment of the trial court is affirmed.

---

4. Moreover, it is undisputed that the lease agreement terminated upon the sale of the property to the Meiers, and Comeaux did not seek to exercise his right of first refusal until more than a year later, long after any purported right he had under the lease agreement had expired.