TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-05-00455-CV







Startex First Equipment, Ltd., Appellant



v.



Aelina Enterprises, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. GN304793, HONORABLE PETER M. LOWRY, JUDGE PRESIDING







O P I N I O N




 This appeal arises out of a dispute regarding the ownership of a .384-acre tract of
commercial real property in Bastrop County. Appellant Startex First Equipment, Ltd., appeals the
trial court's summary judgment in favor of appellee Aelina Enterprises, Inc., granting Aelina title
to the property. In two issues, Startex contends that the trial court erred in granting Aelina's motion
for summary judgment and denying Startex's motion for partial summary judgment. Because
Startex's right of first refusal survived previous sales of the property and was superior to Aelina's
purchase option, we reverse the district court and render judgment in favor of Startex.


FACTUAL AND PROCEDURAL BACKGROUND


 This case involves a dispute over a right of first refusal. In 1970, the Wilhelms, the
owners of the .384-acre tract, entered into a Lease and Operating Agreement ("Lease Agreement")
with Pioneer Oil Company to operate a gasoline pumping station on the property. Section 14C of
the Lease Agreement granted to Pioneer a right of first refusal. It provides in relevant part:


If, during the term of this lease, or any renewal thereof, lessor receives a bonafide
offer to purchase the premises which offer lessor wishes to accept, lessor shall be
obligated first to notify lessee in writing of such offer, and lessee shall then have
seven days from the receipt of such written notice in which to exercise lessee's first
right of purchase or refuse to purchase the premises at said offered price, and only
after the expiration of said seven-day period can lessor proceed to accept the offer
and sell the premises to such original bonafide offeror, and then such sale shall be
subject to the terms of this lease or any renewal thereof. 



(Emphasis added.)

 During the term of the Lease Agreement, the property was sold by the Wilhelms'
successors, the Joneses, to the Eglesons in 1979, and by the Eglesons to Kathy Favoccia in 1987. 
In 1996, Kathy Favoccia, then owner of the property, entered into a Retail Store Lease/Purchase
Contract with Aelina, allowing it to run the convenience store on the property. The Retail Store
Lease/Purchase Contract granted Aelina an option to purchase the property.

 In 2002, Startex purchased Pioneer's interest in the Lease Agreement and received
an express written assignment from Pioneer. Section 14D of the Lease Agreement gave Pioneer the
right to "assign its operation on the premises."

 In May 2003, Favoccia and Aelina entered into an earnest money contract for the
purchase of the property in the amount of $240,000. Favoccia notified Startex of the contract,
"pursuant to paragraph 14C of the [Lease and Operating] agreement." In a letter sent to Favoccia
in June 2003, Startex "formally and affirmatively exercise[d] its right of purchase of the property
under Paragraph 14C of the Lease Agreement, on the same terms" as the offer from Aelina. On July
29, 2003, Startex purchased the property from Favoccia and received a general warranty deed. On
July 31, 2003, Aelina notified Startex that it was attempting to purchase the property from Startex
by exercising the purchase option it acquired from Favoccia in its Retail Store Lease/Purchase
Contract. Startex disputed Aelina's right to buy the property and has declined to sell the property.

 Aelina filed suit in Travis County district court seeking specific performance of the
land purchase contract and, alternatively, damages for breach of contract. The court granted Aelina
summary judgment, specifying in the order the basis for its ruling. The court found, 



 Pioneer's right of first refusal in the Lease Agreement expired before it assigned
its interest to Startex. Therefore, Startex did not acquire a right of first refusal;

 Aelina received a valid purchase option in its Retail Store Lease/Purchase
Contract with Kathy Favoccia not subject to any right of first refusal;

 Startex took title to the property subject to the obligations of Kathy Favoccia
under the valid Aelina purchase option;

 Startex is compelled to perform those obligations by conveying legal title to
Aelina upon the terms and conditions of Aelina's properly exercised option.




The trial court denied Startex's motion for summary judgment, which sought unencumbered title to
the property and a declaration that Startex had no obligation to sell the property to Aelina. This
appeal followed.


ANALYSIS


The Controversy

 Startex argues that the right of first refusal survived two previous sales of the
property, from the Wilhelms' successors, the Joneses, to the Eglesons, and from the Eglesons to
Kathy Favoccia. To support its argument, Startex points to the language in 14C that reads, "only
after the expiration of said seven-day period can lessor proceed to accept the offer and sell the
premises to such original bonafide offeror, and then such sale shall be subject to the terms of this
lease or any renewal thereof." (Emphasis added.) Startex argues that because the property was sold
"subject to the terms" of the Lease Agreement, and one of the terms of the Lease Agreement was the
right of first refusal, the right of first refusal survived the previous sales. This interpretation is
confirmed, Startex submits, by Favoccia's notification and eventual sale of the property to Startex,
"pursuant to paragraph 14C of the [Lease and Operating] agreement." Startex further contends that
rights of first refusal are assignable, and that the instant right of first refusal was properly assigned
by Pioneer to Startex and was available to Startex when Aelina and Favoccia entered into their
earnest money contract. Startex claims that its surviving right of first refusal predates, and is
superior to, Aelina's purchase option. Startex further asks the court to strike down, as inequitable,
Aelina's subsequent attempt to "thwart" Startex's prior right of first refusal, which Startex claims
Aelina did by contracting with Favoccia for less than the price of the option, triggering Startex's
right of first refusal, and then attempting to exercise its purchase option to purchase the property
from Startex.

 Aelina contends that Startex did not acquire a right of first refusal from Pioneer
because Pioneer's right expired when it elected not to exercise its right to purchase the property after
receiving notice of two different offers to sell. (1) Aelina further contends that in 1987, the Eglesons
sold the property to Kathy and Larry Favoccia, their daughter and son-in-law, which would implicate
a section of the lease specifically concerning property sales to a lessor's children. (2) Aelina argues
that, because only its right exists, Startex's deed is void, its superiority argument fails, and its
equities argument is irrelevant. Aelina also contends that the Lease Agreement did not expressly
provide that Pioneer's right of first refusal was assignable. (3) In the alternative, Aelina argues that if
the court finds that Pioneer's right of first refusal did not expire and that Startex's deed is valid, then
Startex took title of the property subject to Aelina's 1996 lease and the purchase option therein.


Standard of Review

 Both parties filed motions for summary judgment. Aelina as plaintiff moved for
summary judgment on the grounds that the uncontroverted evidence showed that the right of first
refusal expired before Pioneer sold its interest in the property to Startex. Startex's motion for
summary judgment disputes the expiration of the right of first refusal, claiming that the undisputed
facts and the unambiguous Lease Agreement and other documents show that the right of first refusal
survived previous sales as a matter of law. 

 We review the district court's summary judgment de novo. Valence Operating Co.
v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident Ins. Co. v. Knott, 128
S.W.3d 211, 215 (Tex. 2003). A movant has the burden of showing that there is no genuine issue
of material fact and that it is entitled to judgment as a matter of law. Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 548 (Tex. 1985). When reviewing a traditional summary judgment, we assume that
all evidence favorable to the non-movant is true and indulge every reasonable inference and resolve
all doubts in favor of the non-movant. Id. at 548-49. When, as here, both parties move for summary
judgment and the district court grants one motion and denies the other, we review the summary
judgment evidence presented by both sides, determine all questions presented, and render the
judgment the district court should have rendered. Texas Workers' Comp. Comm'n v. Patient
Advocates of Tex., 136 S.W.3d 643, 648 (Tex. 2004); FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872 (Tex. 2000).


The Right of First Refusal

 The threshold question is whether the right of first refusal in the Lease Agreement
survived the previous sales of the property. Citing Comeaux v. Suderman, Aelina claims that rights
of first refusal expire if they are not exercised. 93 S.W.3d 215, 223 (Tex. App.--Houston [14th
Dist.] 2002, no pet.). Comeaux was a lessee of a one-acre lot with a right of first refusal to purchase
the property. Id. at 217. When the lessor of the property agreed to sell thirty-five acres, including
Comeaux's lot, to a prospective buyer, the lessor did not provide Comeaux with the details of the
deal or a copy of the earnest money contract. Id. Comeaux assumed that the sale involved only
twenty-two acres surrounding his property and did not further inquire about the sale before deciding
not to exercise his option. Id. at 218. Comeaux later filed suit against the owners of the property,
charging that they failed to comply with the terms of his right of first refusal. Id. Aelina cites
Comeaux for the broad proposition that, "once Comeaux affirmatively declined to exercise his right
after receiving notice and an opportunity to assert his right to purchase the leased premises, the
option expired." Id. at 223.

 We do not agree that Comeaux is dispositive of the issue here. Comeaux specifically
resolved a question of adequate notice, holding that when a property owner makes a reasonable
disclosure to the holder of a right of first refusal of the terms of a proposed sale, the right holder has
a duty to undertake a reasonable investigation of any terms unclear to him. Id. at 221. The Comeaux
court further held that when the right holder receives notice and is given the opportunity to exercise
his right of first refusal, technical deficiencies in the notice cannot revive the right that was declined. 
Id. at 222. While that issue of adequate notice was dispositive in Comeaux, it is not here.

 Additionally, the right of first refusal in Comeaux lacks the disputed language of the
provision in the instant case. See id. at 217. Rights of first refusal are bargained-for contractual
provisions, and their scope must be determined by interpreting the contractual language at issue. See
3 Eric Mills Holmes, Corbin on Contracts § 11.4 (Joseph M. Perillo, ed., 1996). The specific
wording used in the Lease Agreement makes its interpretation a matter of first impression. See id.
("Words that are used in a contract transaction . . . must in case of dispute be interpreted before
determining the legal relations of the parties."); cf. Gallup v. St. Paul Ins. Co., 515 S.W.2d 249, 250
(Tex. 1974) ("In construing a contract, the thing of first importance is the language of the contract
itself.").

 We look to the text of the Lease Agreement to ascertain the meaning of its right of
first refusal provision. When construing the Lease Agreement, we must ascertain and give effect to
the parties' intentions as expressed in the document. See Frost Nat'l Bank v. L&F Distribs., 165
S.W.3d 310, 311 (Tex. 2005). "'If the written instrument is so worded that it can be given a certain
or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the
contract as a matter of law.'" SAS Inst., Inc. v. Breitenfeld, 167 S.W.3d 840, 841 (Tex. 2005)
(quoting Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)). We consider the entire writing and
attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions
with reference to the whole agreement. Frost Nat'l Bank, 165 S.W.3d at 312. We construe contracts
from a utilitarian standpoint bearing in mind the particular business activity sought to be served. Id.

 The Lease Agreement is composed of 22 numbered sections, of which the right of
first refusal is included in section 14, titled "Additional Terms." Included in this section are five
unrelated provisions, lettered A through E, of which the right of first refusal is letter C. 

 The plain text of 14C creates a right of refusal that survives sales of the property. The
disputed language of the provision subjects the sale of the property "to the terms of this lease or any
renewal thereof." If the property is sold "subject to the terms" of the Lease Agreement, and one of
the terms of the Lease Agreement is the right of first refusal, then the right of first refusal survives
all sales of the property. This interpretation is bolstered by the placement of this "survival term" in
the right of first refusal provision.

 With a similar rationale, our sister court in Dallas held that a right of first refusal
provision did not expire the first time the right holder chose not to invoke it and that it continued to
apply to each qualifying offer the property owner received. See 6500 Cedar Springs L.P. v.
Collector Antique, Inc., No. 05-98-00386-CV, 2000 Tex. App. LEXIS 5583 (Tex. App.--Dallas
August 21, 2000, no pet.) (mem. op.). Although the contractual language at issue was unique to the
case, see id. at *1-2, the court interpreted a provision requiring the owner or his transferee to
perform all the terms, covenants, and conditions of the contract to mean that the right of first refusal,
as a term of the contract, continued with each successor to the lease. Id. at *9. The contractual
language regarding the transferee's obligations was placed in section 17.1 of the contract, not in
section 33, which pertained to the right of first refusal. Id. The facts in the instant case, therefore,
weigh more heavily in favor of the survival of the right of first refusal because the dispositive
language is located in the text of the provision itself.

 Although the property was sold from the Wilhelms to the Eglesons to the Favoccias
during the period of Pioneer's right of first refusal, each sale was expressly made subject to the terms
of the Lease Agreement. Because the right of first refusal was one of the terms of the Lease
Agreement, it survived the sales of the property and was in full force and effect when Favoccia
sought to sell to Aelina. Favoccia referenced Startex's right of first refusal in a letter notifying
Startex of Favoccia's contract with Aelina, "pursuant to paragraph 14C of the [Lease and Operating]
agreement." In the letter, Favoccia's attorney wrote, "Pursuant to this agreement, one of you
[Pioneer or Startex] has seven days from receipt of written notice in which to exercise a right of first
refusal." Startex subsequently exercised its right of purchase under Paragraph 14C of the Lease
Agreement and purchased the property from Favoccia for $240,000, the price offered by Aelina.

 Aelina contends that, if the right of first refusal did not expire and Startex's deed is
valid, Startex took title to the property subject to Aelina's purchase option, which it acquired in
1996. We disagree. The cases consistently hold that a purchaser, with notice of a previously given
option, takes subject to the rights of the optionee. Burford v. Pounders, 199 S.W.2d 141, 142 (Tex.
1947); Herman v. Shell Oil Co., 93 S.W.3d 605, 608 (Tex. App.--Houston [14th Dist.] 2002, no
pet.). Although the parties do not cite us to any case law regarding a right of first refusal competing
with an option and we find none, we believe the reasoning of Burford applies here and we find
support for this view in a treatise on the subject.

 In Burford, the owner of the property gave Burford, the lessee, an option to purchase
land for the duration of his two-year lease. Burford, 199 S.W.2d at 142. The owner then sold the
property to Pounders five months before the lease expired, while Burford was in possession of the
land and using it for a garden and pasture. Id. The court found that Pounders had constructive notice
of the contents of the lease at the time he received the deed because he was told by the owner that
Burford was in possession of the property and because there were visible circumstances confirming
this fact. Id. The court determined that Pounders was not an innocent purchaser for value and that
he was in no better position than his grantor to defend against Burford's lawsuit. Id.

 From the reasoning of Burford, it follows that an option holder, with notice of a
previously given right, takes subject to that right. Similar to the optionee in Burford, the holder of
the previously given right, who has paid consideration therefor, is entitled to rely on his rights. One
commentator observed, 


The [option-holding] tenant may find that [his] purchase option is not an unalloyed
benefit. If, when the lease is made, the landlord's title is encumbered or flawed, the
tenant can acquire no better title. . . . The lease and option may be cut off by
enforcement of a paramount interest. . . . Accordingly, the tenant cannot rely on the
option for any serious purpose unless he satisfies himself with the condition of the
landlord's title before entering the lease and then records the lease, or a memorandum
of the lease, with the option included.



2 Milton R. Friedman, Friedman on Leases, § 15.101 (3d ed. 1997).

 In the instant case, the right of first refusal invoked by Startex was granted to Pioneer
in 1970 and filed of record. Aelina obtained its option twenty-six years later, subject to that right. 
Although Aelina maintains that it was not aware of the prior right of first refusal until it began
negotiations to purchase the property from Favoccia in 2002, any proper inquiry would have
disclosed this adverse right. Since the Lease Agreement was recorded and available for inspection,
Aelina is charged with constructive notice of its contents. See Strong v. Strong, 98 S.W.2d 346, 348
(Tex. 1936); Herman, 93 S.W.3d at 608. Additionally, Aelina is charged with inquiry notice of the
Lease Agreement because it would have been apparent from a reasonable inspection of the property
that a separate entity was conducting gasoline sales. See Strong v. Strong, 98 S.W.2d at 348;
Herman, 93 S.W.3d at 608. If Aelina had investigated the arrangement between Favoccia and this
entity, whether it was Pioneer or Startex, it would have discovered the Lease Agreement. See
Herman, 93 S.W.3d at 608.

 Startex's right pre-dated Aelina's right, and was superior to Aelina's option. Aelina
did not override Startex's preexisting right of first refusal by first contracting with Favoccia for less
than the price of the option, triggering Startex's right of first refusal, and then exercising its purchase
option at the option price.


CONCLUSION


 Because Startex's right of first refusal survived the previous sales of the property and
was superior to Aelina's purchase option, we reverse the district court and render judgment in favor
of Startex.



 __________________________________________

 Jan P. Patterson, Justice

Before Justices B. A. Smith, Patterson and Puryear

Reversed and Rendered

Filed: April 14, 2006

1. The parties agree that notice is not an issue here.
2. We will not address this contention because there is no evidence of this relationship in the
record.
3. Because Aelina does not include this argument in its motion for summary judgment, we
will not consider it. See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 677 (Tex.
1979).