Affirmed and Memorandum Opinion filed August 27, 2009








Affirmed
and Memorandum Opinion filed August 27, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-01062-CV

_______________

 

DURRETT DEVELOPMENT, INC., Appellant

 

V.

 

GULF COAST CONCRETE, LLC, Appellee

                                                                                                                                               


On Appeal from the 23rd District Court

Brazoria County, Texas

Trial Court Cause No. 40180

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

This case arises out of a dispute
between a landlord and its tenant, who contracted for an option to purchase the
leased property  The landlord-optionor sought a declaratory judgment to settle
a dispute with the tenant-optionee under the parties= written agreement as to the
tenant-optionee=s exercise of a purchase option or right of first refusal. 
The trial court granted summary judgment in favor of the tenant-optionee.  We
affirm.  

I.  Factual
and Procedural Background








Appellant Durrett Development, Inc.,
as landlord, entered into a written lease agreement with appellee Gulf Coast
Concrete, LLC, as tenant.  In the parties= agreement, Durrett Development
granted Gulf Coast Concrete an option to purchase the leased property and a
right of first refusal, as set forth below: 

Option to Purchase Leased Premises

15.01.  Landlord, for the consideration of Tenant
entering into this lease agreement, grants to Tenant an irrevocable option to
purchase the leased premises.  To exercise this purchase option, Tenant must,
on or before September 25, 2007 give written notice to Landlord, in the manner
required for notices under this lease, of the Lessee=s election to exercise the option.  At that time,
Tenant will present Landlord with an appraisal of the property and an offer
price.  If Landlord is not willing to accept Tenant=s offer price based upon Tenant=s appraisal, Landlord may choose his own appraiser and
submit an offer price to Tenant based on the findings of Landlord=s appraiser.  If Tenant does not accept Landlord=s appraiser=s
valuation, Tenant=s appraiser and Landlord=s appraiser will select a mutually acceptable appraiser to appraise the
property and the selling price of the property will be based on an average of
three appraisals.

Right of First Refusal to Purchase Leased Premises

15.02[.]  If Landlord, during the lease term or any
extension of the lease, offers to sell or receives a bona fide offer from a
third party to buy all or any portion of the leased premises [separately or as
part of the larger parcel of which the leased premises are a part], Landlord
will promptly give written notice to Tenant of the terms of the offer made or
received and Landlord=s willingness to sell for that price and on those
terms.  Upon receiving the notice, Tenant may exercise the option, in the manner
specified below, to purchase the property described in the offer at the stated
price and on the stated terms.

 

15.03[.] 
If Tenant elects to accept the Landlord=s
offer or meet the third-party=s offer under
the provisions of the preceding section, Tenant must notify Landlord of that
election, doing so in writing delivered to Landlord within sixty days after the
date of Landlord=s notice to Tenant of the offer.  If Tenant elects to
refuse the offer or not to meet the third-party offer, Tenant need take no
action whatsoever; further, if Tenant fails to deliver to Landlord a notice of
Tenant=s elections to accept within the time required of such
notice, Tenant will be deemed to have refused the offer to sell or the right to
meet the offer of purchase.  If Tenant elects or is deemed to refuse the offer,
Landlord is free to sell or accept the offer to buy the property subject to the
continuation of the leasehold estate created by this lease.








Prior to
the option deadline, on August 11, 2006, Gulf Coast Concrete received a letter
from Durrett Development=s attorney, notifying Gulf Coast Concrete of an offer from a
third-party, MAW Development, LLC, to purchase the property and advising of
Durrett Development=s willingness to accept the third-party offer.  The letter states
in pertinent part,

Pursuant to paragraphs 15.01 and 15.02 of the lease, this will serve as
the required notice of the offer of sale and my client=s willingness to sell the property at the price
offered and under the terms specified.  Under the terms of the lease, you have
the right of first refusal to purchase the property at the stated price and on
the same terms.  You have sixty (60) days after the date you receive this
notice to notify my client if you indent [sic] fo [sic] meet the purchaser=s offer.

The letter was
accompanied by a letter from MAW Development to Kris Durrett, the president of
Durrett Development, in which MAW Development proposed terms and conditions for
the sale of the property. 

By
letter dated October 2, 2006, Gulf Coast Concrete sent Durrett Development
written notice of its election to exercise its option to purchase the property
under section 15.01 of the lease.  The notice is provided in relevant part below:

In
accordance with Section 15.01 of the above referenced Lease, Tenant hereby
gives its written notice to Landlord of Tenant=s elections to exercise its option to purchase the Leased Premises (the
AOption@). 
The offer price for Tenant=s purchase of
the real estate and the concrete batch plant on the property is $3,425,000.00. 
In support of that offer price, enclosed please find a current appraisal of the
Leased Premises by Osenbaugh Realtors dated September 28, 2006 (ATenant=s Appraisal@). 

In this notice, Gulf
Coast Concrete proposed a number of terms for payment and purchase of the
property.








Durrett Development responded with a
letter that stated in relevant part, ASection 15.01 of the lease, as
referenced in your correspondence relating to Tenant=s option to purchase, is no longer
applicable.  Rather, the receipt of the [MAW Development] LOI [Letter of
Intent] and Durrett=s willingness to accept same triggered Section 15.02 (Right
of First Refusal to Purchase Leased Premises).@  Gulf Coast Concrete subsequently
demanded that Durrett Development perform under the purchase-option provision
in section 15.01 by selling the property; Durrett Development did not comply. 
As a result of the parties= dispute, Durrett Development claimed that it was unable to
sell the property to MAW Development.  Gulf Coast Concrete notified Durrett
Development of its belief that Durrett Development was in default under the
contract for failure to perform in accordance with section 15.01.

Durrett Development filed suit
seeking a declaratory judgment as to the parties= rights under the contract provisions
for the purchase option and the tenant=s right of first refusal.  Both
parties filed motions for summary judgment.  The trial court denied Durrett
Development=s motion and later granted Gulf Coast Concrete=s motion.  In a single issue on
appeal, Durrett Development challenges the trial court=s granting of Gulf Coast Concrete=s motion for summary judgment.[1]

II. 
Analysis

Durrett Development claims that
summary judgment was improper because Gulf Coast Concrete did not exercise
either the purchase option or the right of first refusal under the applicable
provisions of the lease.  Resolution of this issue turns on whether Durrett
Development=s initiation of the right-of-first-refusal process under section 15.02
rendered Gulf Coast Concrete=s purchase-option rights under section 15.01 inapplicable, as
Durrett Development urges on appeal.








In a traditional
motion for summary judgment, if the movant=s motion and summary-judgment evidence facially establishes
its right to judgment as a matter of law, the burden shifts to the nonmovant to
raise a genuine, material fact issue sufficient to defeat summary judgment.  M.D.
Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000).
In our de novo review of a trial court=s summary judgment, we consider all
the evidence in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could, and disregarding
contrary evidence unless reasonable jurors could not.  Mack Trucks, Inc. v.
Tamez, 206 S.W.3d 572, 582 (Tex. 2006).  The evidence raises a genuine
issue of fact if reasonable and fair-minded jurors could differ in their
conclusions in light of all of the summary-judgment evidence.  Goodyear Tire
& Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007).  When, as in
this case, the trial court did not specify in the order granting summary
judgment the grounds upon which the trial court relied, we must affirm the
summary judgment if any of the independent summary-judgment grounds is
meritorious.  FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868,
872 (Tex. 2000).

In construing the language of the
parties= agreement, our primary concern is to
ascertain and give effect to the intentions of the parties as expressed in
their written contract.  Kelley‑Coppedge, Inc. v. Highlands Ins. Co.,
980 S.W.2d 462, 464 (Tex. 1998).  To ascertain the parties= true intentions, we examine the
entire agreement in an effort to harmonize and give effect to all provisions of
the contract so that none will be rendered meaningless.  MCI Telecomms.
Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999).  Terms in
a contract are given their plain, ordinary, and generally accepted meanings
unless the contract itself shows the terms to be used in a technical or
different sense.  Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121
(Tex.  1996).  When a written contract is worded so that it can be given a
certain or definite legal meaning or interpretation, it is unambiguous, and the
court construes it as a matter of law.  Am. Mfrs. Mut. Ins. Co. v. Schaefer,
124 S.W.3d 154, 157 (Tex. 2003).  Neither party contends that the agreement is
ambiguous, and we conclude it is unambiguous.  The interpretation of an 
unambiguous contract is a question of law that we review de novo.  See MCI
Telecomms. Corp., 995 S.W.2d at 650B51.








At the outset, we note that the
parties= agreement contains two discrete
provisions that individually give Gulf Coast Concrete potential rights to
purchase the leased property.  The first, created in section 15.01, is an
irrevocable option, which, if exercised, would give Gulf Coast Concrete the
absolute right to purchase the property on or before September 25, 2007 (the AOption Deadline@) under the terms specified in the
parties= agreement.  The second provision,
set forth in section 15.02, creates a right of first refusal, which, if
exercised, could ripen into an option to purchase the property under the terms
set forth in section 15.03 of the parties= agreement. Unlike the option created
in section 15.01, which by its terms is limited to the time period before the
Option Deadline, the right of first refusal created in section 15.02 may be
triggered at any time during the lease term and any extensions of the lease,
even after the Option Deadline. 

Did the optionee exercise its right
of first refusal?

Durrett Development argues that Gulf
Coast Concrete did not exercise its right of first refusal under the lease
provisions.  Generally, a right of first refusal empowers the holder with the
preferential right to purchase the property on the same terms offered by or to
a bona fide purchaser in the event that the property owner decides to sell the
property.  See Tenneco, Inc. v. Enterprise Prods. Co., 925 S.W.2d 640,
644 (Tex. 1996); Comeaux v. Suderman, 93 S.W.3d 215, 219 (Tex. App.CHouston [14th Dist.] 2002, no pet.). 
A right of first refusal is distinct from a purchase option, in which the
holder of the option purchases the right to compel a sale of property on the
stated terms before the expiration of the option.  Sinclair Refining Co. v.
Albritton, 147 Tex. 468, 475, 218 S.W.2d 185, 188B89 (Tex. 1949); Comeaux, 93
S.W.3d at 219B20.  Typically, option contracts have two components: (1) an underlying
contract that is not binding until accepted, and (2) a covenant to hold open to
the optionee the opportunity to accept.  Comeaux, 93 S.W.3d at
220.








A right of first refusal may ripen
into an option contract upon the occurrence of a triggering event, as specified
in the parties= agreement.  Although a right of first refusal may ripen into an option
when the owner elects to sell, an option cannot ripen into an enforceable
contract of sale until the holder of the option manifests acceptance.  See
id.; see also Sinclair Refining Co., 147 Tex. at 474, 218 S.W.2d at
188 (providing that the act of delivering notice, if timely and not otherwise
invalid, converts an option into a contract of purchase and sale).  Acceptance
of an option must be unqualified, unambiguous, and in strict accordance with
the terms of the option agreement.  Comeaux, 93 S.W.3d at 220. 
Failure to exercise an option according to its terms, including untimely or
defective acceptance, amounts to a rejection.  Id.  If the optionee
declines to purchase the property, the owner may sell to anyone.  Id. 

Gulf Coast Concrete attached a copy
of the lease to its summary-judgment motion.  Under section 15.02, if Durrett
Development offers to sell or receives a bona fide offer from a third-party to
buy all or any portion of the leased property, Durrett Development is required
to give written notice to Gulf Coast Concrete of the terms of the offer made or
received and of the landlord=s willingness to sell for that price and on those terms. 
Durrett Development sent notice of MAW Development=s offer and Durrett Development=s willingness to sell the property. 
This notice was included in Gulf Coast Concrete=s summary-judgment evidence.  We
presume, without deciding, that the offer from MAW Development was a bona fide
third-party offer and that Durrett Development=s letter, dated August 11, 2006,
operated as the written notice required under section 15.02.[2] 
Therefore, Gulf Coast Concrete=s right of first refusal ripened into an option when Durrett
Development elected to sell.  See id. 








However, before the option created by
the right of first refusal could ripen into an enforceable contract, Gulf Coast
Concrete had to manifest unambiguous acceptance of the option strictly in
accordance with the terms of the agreement.  See id.  Under section
15.03 of the lease, to exercise its right of first refusal, Gulf Coast Concrete
was required to notify Durrett Development of its election to purchase the
property at the same price and terms offered by MAW Development.  Under the
undisputed summary-judgment evidence, Gulf Coast Concrete did not do so, and
thus it did not manifest acceptance of the terms proposed for the right of
first refusal.  Rather, Gulf Coast Concrete sought to proceed under an entirely
different provision; it sought to exercise its option right under section
15.01.  In a letter, dated October 2, 2006, Gulf Coast Concrete specified that
it elected to exercise the purchase option under section 15.01 of the lease. 
This letter, along with an offer price and valuation appraisal, contained Gulf
Coast Concrete=s own terms for purchase and payment of the leased property.  Though Gulf
Coast Concrete=s failure to exercise the right of first refusal according to section
15.03 in the lease would amount to a rejection of the right of first refusal in
section 15.02, Gulf Coast Concrete did not rely on section 15.02 in asserting
its right to purchase the property.  Instead, Gulf Coast Concrete sought to
exercise its option right under section 15.01.  See id. at 222B23 (involving a tenant who had notice
of third-party offer and was given an opportunity to exercise the right of
first refusal, which the tenant declined). 

Durrett Development asserts that A[t]he Lease, in ' 15.02, limits and modifies ' 15.01 in the event [Durrett
Development] received an offer to sell the subject property from a third-party.@  Although option contracts generally
are construed against the optionee, a purchase option is largely for the
benefit of the optionee.  Sinclair Refining Co., 147 Tex. at 474, 218
S.W.2d at 188.  We therefore construe the purchase option in section 15.01 accordingly. 
See id.








Durrett Development points to
language in section 15.02 that provides, A[u]pon receiving the notice, Tenant
may exercise the option, in the manner specified below, to purchase the
property described in the offer at the stated price and on the stated terms.@  We construe the language in section
15.02, to which Durrett Development refers, as operating to ripen the tenant=s right of first refusal in section
15.02 into an option, which thereafter may be accepted by Gulf Coast Concrete. 
See Comeaux, 93 S.W.3d at 220 (providing that a right of first refusal
ripens into an option when the owner elects to sell, but an enforceable
contract of sale ripens from that option once the holder of the option
manifests acceptance).  Despite Durrett Development=s contentions, section 15.02 does not
specify that, once the landlord gives written notice of a third-party offer,
section 15.01 is no longer applicable.[3]  The lease
does not contain any provision that renders inapplicable Gulf Coast Concrete=s option to purchase the property
under section 15.01 before the Option Deadline.  To the contrary, section 17.07
of the lease provides that Athe rights and remedies provided by this lease are
cumulative, and either party=s using of any right or remedy will not preclude or waive its
right to use any other remedy.@  

In section 15.01, Gulf Coast Concrete
was granted an irrevocable option to purchase the leased premises by the giving
of written notice of its election to exercise the option, along with an offer
price and valuation appraisal, on or before the Option Deadline. See Sinclair
Refining Co., 147 Tex. at 475, 218 S.W.2d at 188 (AThe purpose of purchase options is to
give the optionee the right to purchase at his election within an agreed period
at a named price, which presumably was considered satisfactory by the optionor
in case the option should be exercised at any time during the option term.@); Comeaux, 93 S.W.3d at 219B20 (providing that the holder of a
purchase option has the right to compel sale of the property on the stated
terms before expiration of the option).  Therefore, the unambiguous language of
the lease does not support Durrett Development=s contention that the lease terms
limited or modified application of section 15.01 or terminated Gulf Coast
Concrete=s right to purchase the property
under section 15.01.

Did the optionee exercise the purchase option
under the lease?








Section 15.01 provides that in order
to exercise the purchase option under the lease, Gulf Coast Concrete, on or
before the Option Deadline, must give written notice to Durrett Development of
Gulf Coast Concrete=s election to exercise the purchase option.  The
summary-judgment evidence reflects that before expiration of the Option
Deadline, on October 2, 2006, Gulf Coast Concrete sent written notice to
Durrett Development indicating its election to exercise the purchase option and
specifically referring to section 15.01 of the parties= agreement. Under section 15.01, at
the time Gulf Coast Concrete gives written notice, it also must present Durrett
Development with an appraisal of the property and an offer price.  Gulf Coast
Concrete included in the October 2, 2006 letter both an offer price and a
current appraisal, which also was part of Gulf Coast Concrete=s summary-judgment evidence.  Based
on the evidence, Gulf Coast Concrete conclusively established that it 
exercised the purchase option in section 15.01 according to the lease terms
before expiration of the Option Deadline.  See Sinclair Refining Co.,
147 Tex. at 472, 218 S.W.2d at 187 (providing that once lessee delivered notice
of election to exercise purchase option, the act established the relationship
of vendor and purchaser between the parties); see also Comeaux, 93
S.W.3d at 220 (providing that in order for an option to ripen into an
enforceable contract of sale, the holder of the option must manifest
unambiguous acceptance in strict accordance with the terms of the lease
agreement).  Gulf Coast Concrete=s motion and summary-judgment
evidence facially established its right to judgment as a matter of law.  See,
e.g., Comeaux, 93 S.W.3d at 223 (affirming summary judgment).








The
burden then shifted to the Durrett Development to raise a genuine, material
fact issue sufficient to defeat summary judgment.  In response to Gulf Coast
Concrete=s motion, Durrett Development
submitted evidence that prior to August 10, 2006, Gulf Coast Concrete had not
made a written offer to purchase the property.  Likewise, Durrett Development
submitted evidence that prior to August 10, 2006, Gulf Coast Concrete had not
submitted a valuation appraisal on the property.  Section 15.01 requires Gulf
Coast Concrete to give written notice to landlord on or before the Option
Deadline, notifying Durrett Development of Gulf Coast Concrete=s election to exercise the purchase
option along with an offer price and an appraisal.  In its letter dated October
2, 2006, Gulf Coast Concrete specified its election to exercise the purchase
option under section 15.01 along with the offer price and appraisal.  Durrett
Development=s evidence, even if true, does not raise a fact issue as to whether Gulf
Coast Concrete elected to exercise the purchase option in accordance with
section 15.01.  See Comeaux, 93 S.W.3d at 220 (providing that an option
ripens into an enforceable contract of sale when the holder of the option
unambiguously manifests acceptance in strict accordance with the agreement). 
Summary judgment was therefore proper.  See id. at 223 (affirming
summary judgment granted in favor of the lessor when evidence demonstrated
lessee affirmatively declined to exercise right to purchase property).

III.  Conclusion

In light
of the evidence presented, the trial court did not err in granting summary
judgment in favor of Gulf Coast Concrete.  Therefore, we overrule Durrett
Development=s sole issue on appeal and affirm the trial court=s judgment.

 

 

/s/        Kem Thompson Frost

Justice

 

Panel
consists of Justices Frost, Brown, and Boyce.

 

 

 









[1]           Durrett Development does not claim on
appeal that the trial court committed error in denying Durrett

Development=s
motion for summary judgment.





[2]           In its motion for summary judgment, Gulf
Coast Concrete argued that the process for right of first 

refusal was not triggered by Aproper notice@
because MAW Development=s offer to Durrett Development was not a definite,
final bona fide third-party offer.  It is undisputed that Gulf Coast Concrete
received written notice from Durrett Development of a pending sale of the
leased premises.  See Comeaux, 93 S.W.3d at 221B22 (declining to address argument that notice was
technically insufficient because tenant had actual notice of proposed sale). 
In the notice, Durrett Development made a reasonable disclosure of the terms of
the proposed sale to MAW Development and of Durrett Development=s willingness to accept the terms.  See id.
(concluding that notice made reasonable disclosure of necessary terms). 
Furthermore, the notice offered Gulf Coast Concrete the opportunity to exercise
its right of first refusal, which Gulf Coast Concrete declined.  See id.
at 222 (concluding that technical deficiencies in the notice do not revive the
right of first refusal that the tenant declined).





[3]           Cf. The Elec. Reliability Council of
Tex., Inc. v. Met Ctr. Partners, No. 03-04-00109-CV,

2005 WL 2312710, at *11 (Tex. App.CAustin Sept. 22, 2005, no pet.) (mem. op.) (involving
lease terms that expressly permitted the purchase option to cease and terminate
upon delivery of notice of a bona fide offer that triggered the tenant=s right of refusal).