Claude T. RIDER, Plaintiff–
Respondent,

v.

DIRECTOR OF REVENUE, STATE
OF MISSOURI, Defendant–
Appellant.

No. 22852.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 30, 1999.

Jeremiah W. (Jay) Nixon, Atty. Gen.,
Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for appellant.

No brief filed, for respondent.

KENNETH W. SHRUM, Judge.

The Director of Revenue (Director) appeals from a judgment granting Claude T. Rider (Rider) a hardship driving privilege. Director contends that the trial court lacked jurisdiction to grant the order because Rider was statutorily ineligible for such relief. We agree. We, therefore, reverse.

### FACTS

On August 19, 1998, Rider filed a "Petition For Limited Driving Privileges" claiming he needed to operate a motor vehicle to earn a living as a self-employed "dry waller" in Salem, Missouri. Rider's petition averred that on October 9, 1991, he had been notified by the Director that his operator's license "w[ould] be revoked for a 10 year period from and after October 9, 1991," because he had multiple convictions for driving while intoxicated (DWI). Rider also alleged that (a) he had filed or would file proof of financial responsibility with Director "prior to the grant of any relief"; (b) he was eligible for a limited driving privilege under § 302.309.3(6)(a) "as he has served more than three (3) years of his suspension without conviction"; and (c) he had "not been convicted of any offense related to alcohol, control[led] substances or drugs since his revocation."[1] Rider also attached a copy of his "Missouri Driver Record" to his petition.

These and other assertions in Rider's petition were drawn from § 302.309.3(6)(a), RSMo Cum.Supp.1996, which authorizes a limited hardship driving privilege for a person under a ten-year revocation if certain conditions are met and "the applicant is not otherwise ineligible."[2] Rider's petition fails to specifically

---

1. Rider's petition alleged that he was eligible for a limited driving privilege under "Missouri Statute 302.309.6(a)," and the trial court's judgment purported to grant relief pursuant to " § 302.309.6(a)." However, there is no such section. We perceive this to

be a scrivener's error and believe that Rider and the trial court were actually referring to § 302.309.3(6)(a), RSMo Cum.Supp.1996.

2. In pertinent part, § 302.309.3(6)(a), RSMo Cum.Supp.1996, provides:

aver that there were multiple instances when the Director revoked his driving privileges for refusing to submit to a chemical test in violation of § 577.041.[3] At trial, Director offered Rider's driving record into evidence. This record revealed that Director had issued a "Chemical Refusal Revocation" for Rider's license on four occasions, July 21, 1984; May 22, 1989; October 12, 1990; and February 19, 1995.

Both at trial and on appeal, Director has taken the position that Rider was "otherwise ineligible" for a limited driving privilege under § 302.309.3(5)(f), RSMo Cum. Supp.1996.[4] The trial court disagreed and granted Rider a limited driving privilege. In so doing, the trial court held, *inter alia,* that

> " § 302.309[.3](5)(f) is not applicable as it is the court's opinion that when this section is read together with related sections and viewed from its legislative history, it applies only when a person who is revoked under § 577.041 RSMo.1996 has not completed the one year revocation set out there."

In a single point relied on, Director argues that the trial court did not have subject matter jurisdiction to grant Rider a limited driving privilege under § 302.309.3(6)(a) because he was "otherwise ineligible" for a limited driving privilege under § 302.309.3(5)(f) and *Hagan v.*

> *"Provided that pursuant to the provisions of this section, the applicant is not otherwise ineligible for a limited driving privilege,* a circuit court or the director may, in the manner prescribed in this subsection, allow a person who has had such person's license to operate a motor vehicle revoked where that person cannot obtain a new license for a period of ten years ... to apply for limited driving privileges pursuant to this subsection if such person has served at least three years of such disqualification or revocation. Such person shall present evidence ... that such person has not been convicted of any offense related to alcohol, controlled substances or drugs during the preceding three years and that the person's habits and conduct show that the person no longer poses a threat to the public safety of this state." (Emphasis added.)

*Director of Revenue,* 968 S.W.2d 704 (Mo. banc 1998), in that Rider had violated § 577.041 more than once by refusing to submit to chemical tests. We agree with Director.

In *Hagan,* the Supreme Court of Missouri interpreted § 302.309.3(6)(a) as meaning that "an applicant is only eligible for a hardship license if: (1) he was ineligible to obtain an operator's license for ten years pursuant to section 302.060(9); (2) he had served three years of the ineligibility; *and* (3) he was not 'otherwise ineligible for a limited hardship driving privilege' under 'this section' which includes subsection .3(5)." 968 S.W.2d at 706 (emphasis added). The *Hagan* court explained that Hagan's ten-year DWI revocation for multiple DWI convictions, standing alone, did not disqualify him for a hardship driving privilege under § 302.309.3(6)(a). However, Hagan had a felony conviction involving the use of a motor vehicle—a circumstance that *did* disqualify him for a hardship driving privilege by operation of § 302.309.3(5)(b). 968 S.W.2d at 706. Since Hagan could not satisfy the third requirement of § 302.309.3(6)(a), i.e., he could not show he was not "otherwise ineligible" under other provisions of § 302.309.3, he could not obtain a hardship driving privilege, and the trial court erred in granting him one. *Id.*

3. In every instance that Director ordered a "Chemical Refusal Revocation" of Rider's license, there was a version of § 577.041 in effect.

4. In pertinent part, § 302.309.3(5) provides:

> "Except as provided in subdivision (6) of this subsection, no person is eligible to receive hardship driving privilege whose license has been suspended or revoked for the following reasons:
>
> ....
>
> "(f) Violation more than once of the provisions of section 577.041, RSMo, or a similar implied consent law of any other state...."

In *Sanders v. Director of Revenue,* 998 S.W.2d 804 (Mo.App.1999), Director had issued a ten-year denial of Sanders's license effective August 11, 1992. Five years later, in August 1997, Sanders sought and received a judgment granting him a limited driving privilege. Director appealed, and the eastern district reversed. In so doing, the court observed that Sanders would have qualified for the limited driving privilege under § 302.309.3(6)(a) if not for the fact that his license had been revoked twice before for violating § 577.041 by refusing to submit to chemical tests. *Id.* at 806[3]. The eastern district held that those two violations rendered Sanders ineligible for a limited driving privilege under § 302.309.3(5)(f). *Id.* The court concluded:

> "[A]s [Sanders] had twice previously refused to take a chemical test in violation of RSMo Section 577.041, he was 'otherwise ineligible for a limited driving privilege' under RSMo section 302.309.3(6)(a). Accordingly, because [Sanders] was statutorily ineligible to receive hardship driving privileges, the circuit court lacked jurisdiction to grant such privileges. Thus, as the circuit court lacked subject matter jurisdiction, it may not have taken any other action other than to exercise its powers to dismiss this action. Therefore, the trial court's granting of hardship driving privileges, under the circumstances at bar, is null and void."

*Id.* at 806.

Relying on *Hagan,* 968 S.W.2d 704, and *Sanders,* 998 S.W.2d 804, we find that Rider was ineligible for a limited driving privilege under § 302.309.3(6)(a) because of his multiple violations of § 577.041. The trial court lacked subject matter jurisdiction to grant Rider a limited driving privilege and should have dismissed his petition. Accordingly, the trial court's judgment is null and void.

The judgment of the trial court is reversed.

CROW, P.J., concurs.

PARRISH, J., concurs.