# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

========================

## NO. 03-05-00455-CV

========================

**Startex First Equipment, Ltd., Appellant**

**v.**

**Aelina Enterprises, Inc., Appellee**

=======================================================================
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. GN304793, HONORABLE PETER M. LOWRY, JUDGE PRESIDING
=======================================================================

## O P I N I O N

This appeal arises out of a dispute regarding the ownership of a .384-acre tract of commercial real property in Bastrop County. Appellant Startex First Equipment, Ltd., appeals the trial court's summary judgment in favor of appellee Aelina Enterprises, Inc., granting Aelina title to the property. In two issues, Startex contends that the trial court erred in granting Aelina's motion for summary judgment and denying Startex's motion for partial summary judgment. Because Startex's right of first refusal survived previous sales of the property and was superior to Aelina's purchase option, we reverse the district court and render judgment in favor of Startex.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves a dispute over a right of first refusal. In 1970, the Wilhelms, the owners of the .384-acre tract, entered into a Lease and Operating Agreement ("Lease Agreement")

with Pioneer Oil Company to operate a gasoline pumping station on the property. Section 14C of the Lease Agreement granted to Pioneer a right of first refusal. It provides in relevant part:

> If, during the term of this lease, or any renewal thereof, lessor receives a bonafide offer to purchase the premises which offer lessor wishes to accept, lessor shall be obligated first to notify lessee in writing of such offer, and lessee shall then have seven days from the receipt of such written notice in which to exercise lessee's first right of purchase or refuse to purchase the premises at said offered price, and only after the expiration of said seven-day period can lessor proceed to accept the offer and sell the premises to such original bonafide offeror, *and then such sale shall be subject to the terms of this lease or any renewal thereof.*

(Emphasis added.)

During the term of the Lease Agreement, the property was sold by the Wilhelms' successors, the Joneses, to the Eglesons in 1979, and by the Eglesons to Kathy Favoccia in 1987. In 1996, Kathy Favoccia, then owner of the property, entered into a Retail Store Lease/Purchase Contract with Aelina, allowing it to run the convenience store on the property. The Retail Store Lease/Purchase Contract granted Aelina an option to purchase the property.

In 2002, Startex purchased Pioneer's interest in the Lease Agreement and received an express written assignment from Pioneer. Section 14D of the Lease Agreement gave Pioneer the right to "assign its operation on the premises."

In May 2003, Favoccia and Aelina entered into an earnest money contract for the purchase of the property in the amount of $240,000. Favoccia notified Startex of the contract, "pursuant to paragraph 14C of the [Lease and Operating] agreement." In a letter sent to Favoccia in June 2003, Startex "formally and affirmatively exercise[d] its right of purchase of the property under Paragraph 14C of the Lease Agreement, on the same terms" as the offer from Aelina. On July

2

29, 2003, Startex purchased the property from Favoccia and received a general warranty deed. On July 31, 2003, Aelina notified Startex that it was attempting to purchase the property from Startex by exercising the purchase option it acquired from Favoccia in its Retail Store Lease/Purchase Contract. Startex disputed Aelina's right to buy the property and has declined to sell the property.

Aelina filed suit in Travis County district court seeking specific performance of the land purchase contract and, alternatively, damages for breach of contract. The court granted Aelina summary judgment, specifying in the order the basis for its ruling. The court found,

- Pioneer's right of first refusal in the Lease Agreement expired before it assigned its interest to Startex. Therefore, Startex did not acquire a right of first refusal;

- Aelina received a valid purchase option in its Retail Store Lease/Purchase Contract with Kathy Favoccia not subject to any right of first refusal;

- Startex took title to the property subject to the obligations of Kathy Favoccia under the valid Aelina purchase option;

- Startex is compelled to perform those obligations by conveying legal title to Aelina upon the terms and conditions of Aelina's properly exercised option.

The trial court denied Startex's motion for summary judgment, which sought unencumbered title to the property and a declaration that Startex had no obligation to sell the property to Aelina. This appeal followed.

## ANALYSIS

### *The Controversy*

Startex argues that the right of first refusal survived two previous sales of the property, from the Wilhelms' successors, the Joneses, to the Eglesons, and from the Eglesons to

Kathy Favoccia. To support its argument, Startex points to the language in 14C that reads, "only after the expiration of said seven-day period can lessor proceed to accept the offer and sell the premises to such original bonafide offeror, and *then such sale shall be subject to the terms of this lease or any renewal thereof.*" (Emphasis added.) Startex argues that because the property was sold "subject to the terms" of the Lease Agreement, and one of the terms of the Lease Agreement was the right of first refusal, the right of first refusal survived the previous sales. This interpretation is confirmed, Startex submits, by Favoccia's notification and eventual sale of the property to Startex, "pursuant to paragraph 14C of the [Lease and Operating] agreement." Startex further contends that rights of first refusal are assignable, and that the instant right of first refusal was properly assigned by Pioneer to Startex and was available to Startex when Aelina and Favoccia entered into their earnest money contract. Startex claims that its surviving right of first refusal predates, and is superior to, Aelina's purchase option. Startex further asks the court to strike down, as inequitable, Aelina's subsequent attempt to "thwart" Startex's prior right of first refusal, which Startex claims Aelina did by contracting with Favoccia for less than the price of the option, triggering Startex's right of first refusal, and then attempting to exercise its purchase option to purchase the property from Startex.

Aelina contends that Startex did not acquire a right of first refusal from Pioneer because Pioneer's right expired when it elected not to exercise its right to purchase the property after receiving notice of two different offers to sell.[1] Aelina further contends that in 1987, the Eglesons

---

[1] The parties agree that notice is not an issue here.

sold the property to Kathy and Larry Favoccia, their daughter and son-in-law, which would implicate a section of the lease specifically concerning property sales to a lessor's children.[2]  Aelina argues that, because only its right exists, Startex's deed is void, its superiority argument fails, and its equities argument is irrelevant.  Aelina also contends that the Lease Agreement did not expressly provide that Pioneer's right of first refusal was assignable.[3]  In the alternative, Aelina argues that if the court finds that Pioneer's right of first refusal did not expire and that Startex's deed is valid, then Startex took title of the property subject to Aelina's 1996 lease and the purchase option therein.

### Standard of Review

Both parties filed motions for summary judgment.  Aelina as plaintiff moved for summary judgment on the grounds that the uncontroverted evidence showed that the right of first refusal expired before Pioneer sold its interest in the property to Startex.  Startex's motion for summary judgment disputes the expiration of the right of first refusal, claiming that the undisputed facts and the unambiguous Lease Agreement and other documents show that the right of first refusal survived previous sales as a matter of law.

We review the district court's summary judgment *de novo*.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128

---

[2]  We will not address this contention because there is no evidence of this relationship in the record.

[3]  Because Aelina does not include this argument in its motion for summary judgment, we will not consider it.  *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979).

S.W.3d 211, 215 (Tex. 2003). A movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). When reviewing a traditional summary judgment, we assume that all evidence favorable to the non-movant is true and indulge every reasonable inference and resolve all doubts in favor of the non-movant. *Id.* at 548-49. When, as here, both parties move for summary judgment and the district court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

### The Right of First Refusal

The threshold question is whether the right of first refusal in the Lease Agreement survived the previous sales of the property. Citing *Comeaux v. Suderman,* Aelina claims that rights of first refusal expire if they are not exercised. 93 S.W.3d 215, 223 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Comeaux was a lessee of a one-acre lot with a right of first refusal to purchase the property. *Id.* at 217. When the lessor of the property agreed to sell thirty-five acres, including Comeaux's lot, to a prospective buyer, the lessor did not provide Comeaux with the details of the deal or a copy of the earnest money contract. *Id.* Comeaux assumed that the sale involved only twenty-two acres surrounding his property and did not further inquire about the sale before deciding not to exercise his option. *Id.* at 218. Comeaux later filed suit against the owners of the property,

6

charging that they failed to comply with the terms of his right of first refusal. *Id.* Aelina cites *Comeaux* for the broad proposition that, "once Comeaux affirmatively declined to exercise his right after receiving notice and an opportunity to assert his right to purchase the leased premises, the option expired." *Id.* at 223.

We do not agree that *Comeaux* is dispositive of the issue here. *Comeaux* specifically resolved a question of adequate notice, holding that when a property owner makes a reasonable disclosure to the holder of a right of first refusal of the terms of a proposed sale, the right holder has a duty to undertake a reasonable investigation of any terms unclear to him. *Id.* at 221. The *Comeaux* court further held that when the right holder receives notice and is given the opportunity to exercise his right of first refusal, technical deficiencies in the notice cannot revive the right that was declined. *Id.* at 222. While that issue of adequate notice was dispositive in *Comeaux*, it is not here.

Additionally, the right of first refusal in *Comeaux* lacks the disputed language of the provision in the instant case. *See id.* at 217. Rights of first refusal are bargained-for contractual provisions, and their scope must be determined by interpreting the contractual language at issue. *See* 3 Eric Mills Holmes, Corbin on Contracts § 11.4 (Joseph M. Perillo, ed., 1996). The specific wording used in the Lease Agreement makes its interpretation a matter of first impression. *See id.* ("Words that are used in a contract transaction . . . must in case of dispute be interpreted before determining the legal relations of the parties."); *cf. Gallup v. St. Paul Ins. Co.*, 515 S.W.2d 249, 250 (Tex. 1974) ("In construing a contract, the thing of first importance is the language of the contract itself.").

We look to the text of the Lease Agreement to ascertain the meaning of its right of first refusal provision. When construing the Lease Agreement, we must ascertain and give effect to the parties' intentions as expressed in the document. *See Frost Nat'l Bank v. L&F Distribs*., 165 S.W.3d 310, 311 (Tex. 2005). "'If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law.'" *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank,* 165 S.W.3d at 312. We construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served. *Id.*

The Lease Agreement is composed of 22 numbered sections, of which the right of first refusal is included in section 14, titled "Additional Terms." Included in this section are five unrelated provisions, lettered A through E, of which the right of first refusal is letter C.

The plain text of 14C creates a right of refusal that survives sales of the property. The disputed language of the provision subjects the sale of the property "to the terms of this lease or any renewal thereof." If the property is sold "subject to the terms" of the Lease Agreement, and one of the terms of the Lease Agreement is the right of first refusal, then the right of first refusal survives all sales of the property. This interpretation is bolstered by the placement of this "survival term" in the right of first refusal provision.

With a similar rationale, our sister court in Dallas held that a right of first refusal provision did not expire the first time the right holder chose not to invoke it and that it continued to

8

apply to each qualifying offer the property owner received. *See 6500 Cedar Springs L.P. v. Collector Antique, Inc.*, No. 05-98-00386-CV, 2000 Tex. App. LEXIS 5583 (Tex. App.—Dallas August 21, 2000, no pet.) (mem. op.). Although the contractual language at issue was unique to the case, *see id.* at *1-2, the court interpreted a provision requiring the owner *or his transferee* to perform all the terms, covenants, and conditions of the contract to mean that the right of first refusal, as a term of the contract, continued with each successor to the lease. *Id.* at *9. The contractual language regarding the transferee's obligations was placed in section 17.1 of the contract, not in section 33, which pertained to the right of first refusal. *Id.* The facts in the instant case, therefore, weigh more heavily in favor of the survival of the right of first refusal because the dispositive language is located in the text of the provision itself.

Although the property was sold from the Wilhelms to the Eglesons to the Favoccias during the period of Pioneer's right of first refusal, each sale was expressly made subject to the terms of the Lease Agreement. Because the right of first refusal was one of the terms of the Lease Agreement, it survived the sales of the property and was in full force and effect when Favoccia sought to sell to Aelina. Favoccia referenced Startex's right of first refusal in a letter notifying Startex of Favoccia's contract with Aelina, "pursuant to paragraph 14C of the [Lease and Operating] agreement." In the letter, Favoccia's attorney wrote, "Pursuant to this agreement, one of you [Pioneer or Startex] has seven days from receipt of written notice in which to exercise a right of first refusal." Startex subsequently exercised its right of purchase under Paragraph 14C of the Lease Agreement and purchased the property from Favoccia for $240,000, the price offered by Aelina.

Aelina contends that, if the right of first refusal did not expire and Startex's deed is valid, Startex took title to the property subject to Aelina's purchase option, which it acquired in 1996. We disagree. The cases consistently hold that a purchaser, with notice of a previously given option, takes subject to the rights of the optionee. *Burford v. Pounders*, 199 S.W.2d 141, 142 (Tex. 1947); *Herman v. Shell Oil Co.*, 93 S.W.3d 605, 608 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Although the parties do not cite us to any case law regarding a right of first refusal competing with an option and we find none, we believe the reasoning of *Burford* applies here and we find support for this view in a treatise on the subject.

In *Burford*, the owner of the property gave Burford, the lessee, an option to purchase land for the duration of his two-year lease. *Burford*, 199 S.W.2d at 142. The owner then sold the property to Pounders five months before the lease expired, while Burford was in possession of the land and using it for a garden and pasture. *Id.* The court found that Pounders had constructive notice of the contents of the lease at the time he received the deed because he was told by the owner that Burford was in possession of the property and because there were visible circumstances confirming this fact. *Id.* The court determined that Pounders was not an innocent purchaser for value and that he was in no better position than his grantor to defend against Burford's lawsuit. *Id.*

From the reasoning of *Burford,* it follows that an option holder, with notice of a previously given right, takes subject to that right. Similar to the optionee in *Burford*, the holder of the previously given right, who has paid consideration therefor, is entitled to rely on his rights. One commentator observed,

10

> The [option-holding] tenant may find that [his] purchase option is not an unalloyed benefit. If, when the lease is made, the landlord's title is encumbered or flawed, the tenant can acquire no better title. . . . The lease and option may be cut off by enforcement of a paramount interest. . . . Accordingly, the tenant cannot rely on the option for any serious purpose unless he satisfies himself with the condition of the landlord's title before entering the lease and then records the lease, or a memorandum of the lease, with the option included.

2 Milton R. Friedman, Friedman on Leases, § 15.101 (3d ed. 1997).

In the instant case, the right of first refusal invoked by Startex was granted to Pioneer in 1970 and filed of record. Aelina obtained its option twenty-six years later, subject to that right. Although Aelina maintains that it was not aware of the prior right of first refusal until it began negotiations to purchase the property from Favoccia in 2002, any proper inquiry would have disclosed this adverse right. Since the Lease Agreement was recorded and available for inspection, Aelina is charged with constructive notice of its contents. *See Strong v. Strong,* 98 S.W.2d 346, 348 (Tex. 1936); *Herman*, 93 S.W.3d at 608. Additionally, Aelina is charged with inquiry notice of the Lease Agreement because it would have been apparent from a reasonable inspection of the property that a separate entity was conducting gasoline sales. *See Strong v. Strong,* 98 S.W.2d at 348; *Herman*, 93 S.W.3d at 608. If Aelina had investigated the arrangement between Favoccia and this entity, whether it was Pioneer or Startex, it would have discovered the Lease Agreement. *See Herman*, 93 S.W.3d at 608.

Startex's right pre-dated Aelina's right, and was superior to Aelina's option. Aelina did not override Startex's preexisting right of first refusal by first contracting with Favoccia for less

11

than the price of the option, triggering Startex's right of first refusal, and then exercising its purchase option at the option price.

**CONCLUSION**

Because Startex's right of first refusal survived the previous sales of the property and was superior to Aelina's purchase option, we reverse the district court and render judgment in favor of Startex.

_____

Jan P. Patterson, Justice

Before Justices B. A. Smith, Patterson and Puryear

Reversed and Rendered

Filed:   April 14, 2006