

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00129-CV

---

REAGAN NATIONAL ADVERTISING OF AUSTIN, LLC,
F/K/A REAGAN NATIONAL ADVERTISING OF AUSTIN, INC., APPELLANT

V.

CAROLYN PFEIFFER, APPELLEE

On Appeal from the 368th District Court
Williamson County, Texas[1]
Trial Court No. 23-0199-C368, Honorable Sarah Bruchmiller, Presiding

September 30, 2024

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Reagan National Advertising of Austin, LLC, appeals the trial court's order granting summary judgment to Carolyn Pfeiffer in the parties' dispute concerning the scope of Reagan's right of first refusal (ROFR) in two leases. We affirm the judgment of the trial court.

---

[1] This case is before the Court on transfer from the Third Court of Appeals pursuant to a docket equalization order of the Supreme Court of Texas. TEX. GOV'T CODE ANN. § 73.001.

Pfeiffer owns 51.06 acres of real property in Williamson County ("the Property"). In May of 2000, Pfeiffer and Reagan signed a ten-year lease granting Reagan an interest to place and operate outdoor advertising signs on a 100-foot by 100-foot area of the Property. The lease automatically renewed in 2010 for another ten-year term. In July of 2004, the parties signed another lease for the same purpose on a separate 100-foot by 100-foot portion of the Property. The 2004 lease automatically renewed in 2014 for another ten-year term.

Both leases include a ROFR for Reagan. The ROFRs provide that Pfeiffer shall give written notice to Reagan of the terms and price of any third-party offer, accepted by Pfeiffer, to purchase the premises described in the ROFR. After receiving notice of an offer, Reagan was given thirty days to give written notice of its intent to acquire the premises on the same terms and conditions in the offer. Each lease states that the ROFR applies to the 100'-by-100' area of property leased by Reagan in the lease (the "Billboard Tracts"). The 2000 lease includes a handwritten note by Pfeiffer reading "see area 'A' in Ex[h]ibit 'A.'" The referenced exhibit has Pfeiffer's handwritten note: "First right of refusal only applies to 100' x 100' area on North property line [k]nown as Area 'A.'" The 2004 lease similarly describes the premises as "a 100 square foot area in Exhibit 'A.'"

In March of 2019, Pfeiffer entered into a $3,000,000 Purchase and Sale Agreement ("PSA") with P4 Development, LLC ("P4"), for 25.28 acres of the Property, including the two Billboard Tracts. The PSA assigned a price of $338,237.37 to each Billboard Tract

---

[2] As this is a memorandum opinion and the parties are familiar with the facts, we provide an abbreviated version of the factual background.

and $2,323,525.26 to the remainder of the property ("Tract 3"). It also acknowledged Reagan's ROFR on the Billboard Tracts, stating:

> Seller has notified Buyer that [Reagan] . . . has a right of first refusal on any offer to buy Tracts 1 and 2. . . . In the event that [Reagan] elects to exercise its right of first refusal and purchase one or both of Tracts 1 and 2 on the ROFR Terms . . ., the amount of Purchase Price to be paid by Buyer under this Agreement shall be automatically reduced by the amount of Purchase Price allocable to the Lessee Property as set forth in Section 1 above.

The PSA gave P4 180 days, until September 21, 2019, to inspect the property and terminate the PSA. After the 180-day period, P4 would be deemed to have accepted the property and given thirty days to close. Under the ROFRs in the Reagan leases, if Reagan exercised its right of first refusal, Reagan had an additional thirty days to close, with a deadline of November 20, 2019.

Pfeiffer's counsel sent Reagan a copy of the PSA on March 26, 2019, stating:

> [A]ttached is the receipted contract for the two billboard sites (along with a third tract for the remaining acreage, which is not subject to the right of first refusal in the leases), which is the offer to purchase as detailed in the leases. Please note the billboard tracts' purchase prices are for tracts 1 and 2 . . . .

Reagan's counsel responded stating that Reagan exercised "its right of first refusal as to all of the property covered" by the PSA, not just the Billboard Tracts. Pfeiffer replied that the ROFRs did not give Reagan rights to purchase Tract 3 or any other land beyond the two leased Billboard Tracts. Reagan disputed this, asserting its position that it "get[s] the benefit of, and [has] the obligation to comply with, all the terms and conditions in the contract." The parties remained at an impasse on the issue of Reagan's right to purchase Tract 3.

In January of 2020, Pfeiffer's counsel informed Reagan's counsel that Reagan was in default because it failed to close by the November 20, 2019 closing date and failed to

3

deposit its earnest money into escrow. Pfeiffer gave Reagan ten days to cure the default, expressing a willingness to sell all three tracts for $3,000,000. Reagan did not make the purchase.

In March of 2020, Reagan filed suit for declaratory judgment requesting, among other things, that the trial court declare its rights under the ROFRs and compel specific performance. Pfeiffer filed a plea to the jurisdiction claiming that the district court lacked jurisdiction because, since the PSA had terminated, there was no justiciable controversy between the parties. The trial court granted Pfeiffer's plea and the Third Court of Appeals affirmed the trial court's order. *Reagan Nat'l Adver. of Austin, Inc. v. Pfeiffer*, No. 03-20-00617-CV, 2022 Tex. App. LEXIS 5484, at *27 (Tex. App.—Austin Aug. 3, 2022, pet. denied) (mem. op.).

Following the appeal, Reagan sued Pfeiffer for breach of contract. Reagan alleged that it had properly exercised its right under the ROFRs and Pfeiffer had failed to perform because she did not sell Reagan all three tracts. Pfeiffer filed a motion for summary judgment asserting that Reagan did not have the right to purchase additional property which was not included in the ROFRs. The trial court granted Pfeiffer's motion for summary judgment. This appeal followed.

## ANALYSIS

Reagan raises two issues on appeal. First, it argues that it properly exercised its right of first refusal by accepting all of the terms and conditions offered to the third-party purchaser, even though those terms and conditions included additional property beyond the scope of the ROFRs. Second, Reagan asserts that it established fact issues as to

4

commercial unreasonableness, bad faith, and intent to defeat its ROFRs such that the trial court erred in granting summary judgment for Pfeiffer.

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is proper when the summary judgment evidence shows that there are no disputed issues of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c).

The Right of First Refusal

"A right of first refusal, also known as a preemptive or preferential right, empowers its holder with a preferential right to purchase the subject property on the same terms offered by or to a bona fide purchaser." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 644 (Tex. 1996). Generally, a right of first refusal requires the grantor to notify the rightholder of her intent to sell the property and to offer the property first to the rightholder on the same terms and conditions offered by a third party. *Carl M. Archer Trust No. Three v. Tregellas*, 556 S.W.3d 281, 287 (Tex. 2018). After the grantor communicates the terms to the rightholder, the rightholder may then elect to purchase the property according to the terms of the instrument granting the right of first refusal and the third party's offer or decline to purchase it and allow the owner to sell to the third party. *See Jarvis v. Peltier*, 400 S.W.3d 644, 652 (Tex. App.—Tyler 2013, pet. denied); *FWT, Inc. v. Haskin Wallace Mason Prop. Mgmt., L.L.P.*, 301 S.W.3d 787, 793 (Tex. App.—Fort Worth 2009, pet. denied) (op. on reh'g).

Reagan's Attempt to Exercise its ROFR

In its first issue, Reagan contends that it properly exercised the ROFR by accepting all of the terms and conditions of P4's offer, including the purchase of additional property

5

beyond the scope of the ROFRs, because the ROFRs requires it to accept an offer of sale on the "same terms and conditions" as those made to a third-party purchaser. Pfeiffer responds that Reagan cannot expand its ROFRs to force Pfeiffer to sell to Reagan property that is not subject to the ROFRs.

Reagan argues that our 2023 decision in *Cardoon, LLC v. JBG Organic Holdings, LLC*, No. 07-23-00035-CV, 2023 Tex. App. LEXIS 6083 (Tex. App.—Amarillo Aug. 10, 2023, no pet.) (mem. op.), another right of first refusal case on transfer from the Third Court of Appeals, determines the outcome in this dispute. In *Cardoon*, we considered the question of whether the holder of a right of first refusal can be required to purchase property not identified in the right of first refusal. *Id.* at *3. For purposes of that appeal, we stated our agreement with the general rule expressed in *FWT* that "the holder of a preferential right cannot be compelled to purchase assets beyond those encompassed in the original agreement." *Id.* at *8. However, we further explained that "if the right is expressly subject to the same terms and conditions offered by a prospective, bona fide, third-party purchaser, the right holder must comply with those terms if commercially reasonable, imposed in good faith, and not specifically designed to defeat the preferential right." *Id.* at *8–9. According to Reagan, since the ROFRs in this case require acceptance on the "same terms and conditions" as the third-party offer, this "exception" to the general rule described in *Cardoon* applies and the trial court's summary judgment was therefore erroneous.

However, the present case does not involve an attempt to compel the rightholder to purchase assets in addition to the property subject to the ROFR. Instead, this case presents the question of whether Pfeiffer, the property owner, may be compelled to sell

6

land which is not subject to the ROFR to Reagan, the rightholder, based on a third party's offer to purchase such land. To answer this question, we turn to the agreements at issue, the PSA and the ROFRs. *See Tregellas*, 566 S.W.3d at 287 (when rightholder elects to purchase property subject to ROFR, he may do so "according to the terms of the instrument granting the first-refusal right and the third party's offer . . . ."); *Startex First Equip., Ltd. v. Aelina Enters., Inc.*, 208 S.W.3d 596, 600 (Tex. App.—Austin 2006, pet. denied) (right of first refusal is bargained-for contractual provision; scope of provision must be interpreted by language used in contract).

The PSA separately valued each of the three tracts at issue and provided that P4 would purchase one, two, or all three tracts, depending on whether Reagan exercised its ROFR. The express terms and conditions of the PSA contemplated the possibility that Reagan could exercise its right and purchase either or both Billboard Tracts:

> Seller shall provide written notice of Buyer's offer to purchase Tracts 1 and 2, for the Purchase Price allocable thereto and on such other material terms as are set forth in this Agreement (the "ROFR Terms") to such lessee . . . . In the event that such lessee elects to exercise its right of first refusal and purchase one or both of Tracts 1 and 2 on the ROFR Terms (the "Lessee property"), the amount of Purchase Price to be paid by Buyer under this Agreement shall be automatically reduced by the amount of Purchase Price allocable to the Lessee Property as set forth in Section 1 above.

If Reagan opted to exercise its rights to purchase the Billboard Tracts, the PSA provided that P4 would still proceed with its purchase of Tract 3. Recognizing Tract 3's status as property that was not covered by the ROFRs, the PSA expressly contemplated that Tract 3 could be the sole tract acquired under the PSA: "[T]o the extent that the lessee exercises its right of first refusal and purchases the Lessee Property, all references to the

7

Property in this Agreement shall be deemed to exclude the Lessee property."[3] Thus, the PSA was clear that the three tracts were not required to be "packaged": If Reagan exercised its ROFRs, Reagan would purchase the Billboard Tracts and P4 would purchase Tract 3, but if Reagan opted not to exercise its ROFRs, P4 would purchase all three tracts. The PSA did not contemplate an outcome in which P4 would not purchase Tract 3, or in which Reagan would purchase Tract 3. Therefore, the terms and conditions of the PSA expressly allowed Reagan to exercise its ROFR as to either or both Billboard Tracts without acquiring Tract 3. Communications between the parties confirm that Pfeiffer conveyed this understanding to Reagan and never equivocated on the matter. As Pfeiffer's counsel explained to Reagan's counsel, "The seller is not trying to force your client to buy Tract 3 (and neither is the buyer from my understanding)."

Just as the PSA did not include any option or obligation for Reagan to acquire Tract 3, the ROFRs themselves do not reflect that Pfeiffer and Reagan bargained for Reagan's right to purchase property not identified by the ROFRs. The leases in which the ROFRs are contained state that each ROFR only applies to the 100-foot square of land on which each billboard was located. Reagan's right is limited to its acquisition of the specific premises burdened by the ROFRs. The ROFRs do not require Pfeiffer to offer any other property to Reagan when a third-party offer to purchase such other property is made. In sum, the language of the PSA and the ROFRs in this case does not support Reagan's position that it has the right and obligation to purchase Tract 3.

The present case therefore differs from the "compelled-sale" scenario in *FWT*, where the holder of the ROFR was required to acquire additional business assets to meet

---

[3] Under the PSA, the "Lessee property" meant Tracts 1 and 2, the Billboard Tracts.

8

the specific terms and conditions of the third-party buyer. *FWT*, 301 S.W.3d at 802. In *FWT*, the buyer had "expressly conditioned its purchase or lease of the Property [subject to the ROFR] on its acquisition of the assets of the galvanizing businesses . . . ." *Id.* As set forth above, P4's offer included no such conditions.

Other Texas cases support the premise that an ROFR cannot be used as a tool to compel the sale of property not subject to the ROFR. *See Hinds v. Madison*, 424 S.W.2d 61, 64 (Tex. App.—San Antonio 1967, writ ref'd n.r.e.) ("We do not see how in any way lessee's option or preference right to purchase a portion of the property sought to be sold can be enlarged to cover other lands owned by lessors, or can in any manner cover anything except the property actually subject to the option."); *see also McMillan v. Dooley*, 144 S.W.3d 159, 179 (Tex. App.—Eastland 2004, no pet.) (agreeing with *Hinds*); *Comeaux v. Suderman*, 93 S.W.3d 215, 221 n.2 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (same). Moreover, as our sister court noted in its consideration of Pfeiffer's plea to the jurisdiction, Reagan has not cited any authority for its argument that a landowner may be compelled to sell land that is not subject to an ROFR to the ROFR rightholder when a third party offers to purchase such land. *Reagan*, 2022 Tex. App. LEXIS 5484, at *24.

We agree with the reasoning of these courts. Reagan's attempt to exercise its ROFR by asserting it was entitled to and would only purchase all three Tracts, not just the property covered by the ROFRs, was not an acceptance of the offer to sell the Billboard Tracts. Pfeiffer did not breach the ROFRs by declining to sell all three tracts to Reagan. Accordingly, we overrule Reagan's first issue.

9

<u>No Fact Issues Precluding Summary Judgment</u>

In its second issue, Reagan contends that the trial court erred in granting summary judgment because there were fact issues as to commercial unreasonableness, bad faith, and intent to defeat its ROFRs.  We disagree.

The ROFRs provide that, in order to exercise the right to purchase, Reagan must give written notice to Pfeiffer of its election to exercise that right within thirty days after its receipt of the third-party offer.  Pfeiffer's counsel sent a copy of the PSA to Reagan on March 26, 2019.  In response, on April 22, 2019, Reagan's counsel stated that Reagan exercised "its right of first refusal as to all of the property covered" by the PSA, not just the Billboard Tracts:

> As you may know, by the terms of the Lease and applicable law, Reagan has the right and, if exercised, the obligation to comply with, and to the benefit of all terms and conditions set forth in the Purchase and Sale Agreement to which it has a right of first refusal.  Pursuant to that right and obligation, Reagan hereby exercises its right of first refusal as to all of the property covered by the above-referenced Purchase and Sale Agreement.

When Pfeiffer disputed this, asserting that the ROFRs did not extend to property beyond the two tracts leased by Reagan, Reagan disagreed, claiming that because P4's contract involved all three tracts, Reagan was entitled to purchase all three tracts:  "Your buyer did not get to choose, it had to buy them all.  So we have that right and obligation too under the law."

On May 2, 2019, Reagan's counsel followed up, asking Pfeiffer's counsel to confirm whether Pfeiffer would honor Reagan's right of first refusal "as exercised."  After some back-and-forth, Pfeiffer's counsel reiterated that Reagan's ROFRs relate only to the Billboard Tracts.  By this time, the ROFRs' thirty-day deadline, which ran from Reagan's receipt of the offer on March 26, had passed.  Reagan maintained the position that it

would purchase all three tracts. Reagan did not tender any earnest money required under the PSA.

The summary judgment evidence reflects that Reagan did not send written notice to Pfeiffer indicating its election to exercise its right to purchase the two tracts subject to the ROFRs according to the terms of the ROFRs and the PSA before the expiration of the option deadline. For the reasons set forth in our discussion of the first issue, Reagan's insistence that it would only purchase all three tracts was not an exercise of its option to purchase according to the terms of the relevant agreements. Because Reagan never attempted to purchase only the Billboard Tracts, any objections concerning commercial unreasonableness, bad faith, and intent to defeat its ROFRs in connection with such a purchase were hypothetical. Moreover, although Reagan alleges that it raised these objections "during the ROFR period, during the parties' negotiations," and beyond, Reagan has failed to direct us to any evidence in the record showing that it raised these objections in a timely manner.[4]

We overrule Reagan's second issue.

## CONCLUSION

Having overruled both of Reagan's issues on appeal, we affirm the judgment of the trial court.

Judy C. Parker
Justice

---

[4] Reagan supports its claim by referring to its original petition, which was filed on February 10, 2023, and subsequent pleadings. The deadline for Reagan to exercise its option under the ROFRs was April 25, 2019, and the deadline to close on the PSA was November 20, 2019.