Opinion issued June 30, 2011.


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00146-CV

———————————

Voss Road Exxon LLC and Demos Thanos, Appellants

V.

Frank G.
Vlahakos and Jackson Walker L.L.P., Appellees



 



 

On Appeal from the 190th District Court

Harris County, Texas



Trial Court Case No. 2008-45333

 



 

MEMORANDUM OPINION

          Voss
Road Exxon LLC and Demos Thanos (collectively, “VRE”) sued Jackson Walker
L.L.P. and one of its partners, Frank Vlahakos (collectively, “Jackson Walker”),
asserting that Jackson Walker’s alleged legal malpractice and other wrongful
conduct caused VRE to fail to consummate a purchase of the property on which it
is located pursuant to a right of first refusal in its lease agreement. The
trial court granted summary judgment in favor of Jackson Walker. We conclude
that VRE’s right of first refusal, which expired before VRE contacted Jackson
Walker, was not revived by waiver. Jackson Walker did not cause VRE’s alleged
injury. Because Jackson Walker has disproved causation with respect to VRE’s
loss of its right of first refusal, and because VRE does not assert on appeal
that it had any separate injury distinct from its loss of the right of first
refusal, we hold that the trial court did not err by granting summary judgment.

I.       Background

A.      Factual
background

VRE owns and operates a gas
station, which is located on property that VRE leases from Billie Jean Reed.
The lease agreement contains a right of first refusal that entitled VRE to
purchase the property by matching any third-party offer to purchase the
property that Reed was willing to accept during the initial five-year term of
the lease.[1] Under the right of first
refusal, Reed was required to give VRE notice of any acceptable third-party offer
within seven days of receiving it; VRE then had ten days to exercise its right
of first refusal by sending Reed a “Notice of Exercise.” If VRE failed to
exercise its right of first refusal, Reed could sell the property to the
third-party subject to VRE’s right to lease the property for the remainder of
the initial five-year term. 

Two years into the initial term of
the lease, Reed sent VRE notice of an offer to purchase the property. The
letter notified VRE that it had until July 30, 2007—ten days from the date the notice was “effective”
under the lease, which was three days after it was mailed—to exercise its right of first refusal. The
notice identified Southwest Investment Company, LLC as the third party which
had offered to purchase the property, and it contained the principal terms of
the offer, including price, earnest money payment, and inspection period.

Thanos, VRE’s sole owner, was on
vacation in Greece for four weeks in July 2007, and he did not have anyone
monitoring his mail. He did not actually receive the notice until he returned
home on August 2. Thanos then contacted Vlahakos and retained Jackson Walker to
represent VRE in the matter. Vlahakos immediately emailed Reed’s counsel, Stephanie
Harrison, notifying her that Thanos had been out of the country, stating that
VRE wanted to exercise its right of first refusal, and asking her to accept the
email as notification of exercise. Thanos also wrote Reed a letter explaining
that he had been out of the country and “did not have enough time to reply back
by the July 30, 2007 deadline,” requesting that she allow him another
opportunity to exercise the right of first refusal. Thanos also left a
voicemail for Harrison.

Harrison did not immediately
respond to Vlahakos’s and Thanos’s attempts to contact her, and on August 8,
Jackson Walker attorney Curt Langley sent her a letter informing her that
Thanos was arranging financing and would like to speak with her about the
transaction. That day, Langley spoke with Harrison. In an email to Thanos that
afternoon, Langley stated that Harrison had made the following statements: (1)
when they did not receive a response from VRE by the deadline, they proceeded
under the impression that VRE did not wish to exercise its right of first
refusal; (2) when she received VRE’s notification of exercise on August 2, she inquired
of Reed whether she intended to honor the notification or contest it as
untimely, but she had not yet received Reed’s response; and (3) she considered
her notice of offer letter effective and timely under the lease’s notice
provision. Thanos responded to Langley’s email stating that he “totally accept[ed]
responsibility” but was disappointed that neither Reed nor her broker, each of
whom had been at the gas station recently, had mentioned any possibility of
sale. He also stated in the email that “[a] simple courtesy call or a fair
warning would have been the ethical thing to do” and his wish was “that Ms.
Reed be compassionate.”

The next communication Jackson
Walker received from Reed was an email on August 16 from Christopher Leavitt, Reed’s
grandson and an attorney, who requested that Jackson Walker “have your client
submit his [purchase and sale agreement] to me.”[2] Langley informed Thanos of
the communication and introduced him to Rob Harlow, a real estate transactions
partner at Jackson Walker. After speaking with Thanos, Harlow started preparing
a proposed purchase and sale agreement for VRE. In drafting the agreement,
Harlow contacted Leavitt to request a purchase and sale agreement that had
already been drafted, which he could use as a starting point for VRE’s
agreement, to “keep costs down.” Leavitt told Harlow that he was “working on
the changes for the [purchase and sale] agreement,” but he would provide it to
Harlow soon. In a subsequent email Leavitt told Harlow: “I found the last one
we were working with, and after I make a few changes I will forward it on.” The
next day, Leavitt sent Harlow a draft purchase and sale agreement between Reed
and a buyer to be determined. Leavitt stated that the draft “still might not be
100% perfect.” 

The draft agreement Leavitt sent to
Harlow is labeled “DRAFT” on every page and contains terms that differ from
those in the offer notice Reed had previously sent to VRE. The price stated in
the draft contract is $1,908,000; the notice of offer stated the offered
purchase price as $1,800,000 and further stated that, because the lease
required a six percent commission, a matching offer from VRE would have to be
for $1,914,893.60. Additionally, while both the notice and the draft contract
contemplate $100,000 in earnest money and a forty-five day inspection period,
the notice stated that the inspection period could be extended by thirty days
for payment of an additional $15,000, while the draft contract provided for
only a twenty-day extension for the additional payment.[3]  

Using the draft contract as a
template, Harlow drafted a purchase and sale agreement for Thanos. Harlow used
the $1,914,893.60 purchase price stated in the offer notice rather than the
$1,908,000 price in the draft contract sent to him. Harlow also provided for a
thirty-day extension of the option period in exchange for payment of an
additional $15,000, consistent with the terms identified in the offer notice. Harlow
revised the inspection period provision of the draft contract. Under the draft contract, the
inspection period began on the later of the date VRE waived its right of first
refusal or the date on which all title documents and due diligence materials
were delivered. Harlow removed the reference to VRE’s waiver of its right of
first refusal, and he added a term that provided for the refund of the earnest
money if the purchase transaction were terminated before the end of the
inspection period. Harlow also revised the indemnity provision of the contract
to exclude from VRE’s indemnity obligations events occurring on the property
before closing.[4] He made a minor revision
to the assignment provision, which referenced “TBD, L.L.C.” in the draft
contract. Finally, Harlow revised the provision of the draft contract reciting
the parties’ rights in the event of a fire or other casualty before closing. 

 Harlow sent the proposed purchase and sale
agreement to Thanos for his review, stating that the draft was “based upon the
contract that was proposed to be used for the sale that ‘triggered’ our right
of first refusal.” He asked Thanos to review and comment on the draft. Thanos
asked Harlow questions about the earnest money provision, which Harlow
answered. Harlow then sent the revised draft to Leavitt on August 27. The next
day, Leavitt requested a redline version to show changes from the draft
contract, which Harlow provided. The parties did not communicate further until
September 11, when Thanos emailed Leavitt directly to inquire about the status
of the revised draft. Leavitt responded that Harrison had the draft and would
be communicating with Harlow. 

On September 21, Vlahakos emailed
Harrison to inquire about the status of the transaction. Three days later,
Jackson Walker informed Thanos that Reed had withdrawn the offer to sell the
property. The next day, Vlahakos and Thanos discussed how to proceed. Pursuant
to this discussion, Vlahakos sent a letter to Reed the following day. The
letter stated that they were under the impression that Reed was willing to go
forward with the sale and that they considered the proposed purchase agreement
sent to Thanos to be an offer on the same terms as the third-party offer made
by Southwest Investments, within the meaning of the right of first refusal. The
letter further stated that VRE was willing to agree to the purchase agreement
sent by Leavitt without any changes, except to identify the buyer and keep the
revisions to the earnest money provision; Vlahakos attached to the letter a
purchase agreement with only these revisions, signed by Thanos. 

On October 22, Harrison sent a
letter to Vlahakos in which she stated: Thanos had missed the deadline to
invoke his right of first refusal; Reed had subsequently sent Thanos a proposed
contract that Reed was prepared to sign; Thanos had revised that draft; Reed
considered the changes to be material and to constitute a counteroffer; and
Reed found the revisions unacceptable and decided not to sell the property to
anyone at that time.

B.      Procedural history

After the sale fell through, VRE sued
Jackson Walker, asserting that the firm committed legal malpractice, gross
negligence, violations of the Deceptive Trade Practice Act, and fraud, causing
VRE to lose its right of first refusal. VRE alleged that Jackson Walker acted
wrongfully in revising the draft contract sent to it by Leavitt, that VRE did
not know or approve of these changes, and that Reed would have accepted VRE’s
purchase offer if the terms had not be altered. VRE also alleged that Jackson
Walker attempted to conceal its misconduct after Reed decided not to sell the
property.

Jackson Walker answered and filed a
motion for traditional and no-evidence summary judgment. It argued, among other
things, that VRE lost its right of first refusal by failing to exercise it
timely and that no conduct by Jackson Walker, retained after the fact, could be
the cause of such loss. Jackson Walker also asserted that Thanos lacked
standing to assert the claims individually. In response to these arguments, VRE
asserted that the motion failed to address its “defense of waiver.” VRE
contended that Reed waived a timely “Notification of Exercise” as a
prerequisite to the exercise of VRE’s right of first refusal, basing this
contention on Reed’s failure to expressly reject VRE’s untimely notices of its
desire to purchase the property and the communications that followed. VRE did
not argue that it had an injury separate and apart from the lost opportunity to
purchase the property under its right of first refusal. VRE also asserted that
Thanos had standing to sue in his individual capacity, noting that he was a
guarantor on the lease. 

After a hearing, the trial court
granted Jackson Walker’s motion for summary judgment without stating the
grounds upon which it relied. This appeal followed.

II.      Standard of review

We review a trial
court’s decision to grant summary judgment de novo. Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009); Valence
Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). Jackson Walker moved for both traditional and
no-evidence summary judgment. With respect to its motion for traditional
summary judgment, Jackson Walker bore the burden of demonstrating that no
genuine issue of material fact existed and that it was entitled to judgment as
a matter of law. Tex. R. Civ. P. 166a(c);
KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999). Jackson
Walker could satisfy this burden by conclusively negating at least one element of
VRE’s claims or by establishing all elements of an affirmative defense. Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). 

With respect to Jackson Walker’s motion for no-evidence
summary judgment, VRE bore the burden of presenting evidence sufficient to
raise an issue of fact with respect to each element of its claims challenged in
the motion. Tex. R. Civ. P.
166a(i); Mack Trucks, Inc. v. Tamez,
206 S.W.3d 572, 582 (Tex. 2006). To determine if VRE raised an issue of fact,
we review the evidence in the light most favorable to the party against whom
the summary judgment was rendered, crediting evidence favorable to that party
if reasonable jurors could and disregarding contrary evidence unless reasonable
jurors could not. Fielding,
289 S.W.3d at 848; City of Keller
v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).

When the trial court’s summary judgment order does not state
the basis for the trial court’s decision, we must uphold the order if any of
the theories advanced in the motion is meritorious. Provident Life &
Accident Ins. Co. v. Knott,
128 S.W.3d 211, 216 (Tex. 2003). “Issues not expressly presented to the trial court by
written motion, answer or other response shall not be considered on appeal as
grounds for reversal.” Tex. R. Civ. P. 166a(c).

III.    Analysis

          A.      Standing

          As an
initial matter, we address whether Thanos has standing to pursue the claims pleaded
against Jackson Walker. To bring an action in Texas, a party must have
standing. E.g., DaimlerChrysler Corp. v. Inman, 252 S.W.3d 299, 304 (Tex. 2008).
We have no jurisdiction over a claim made by a party without standing to assert
it. Id. A party has standing only if
the party is personally aggrieved and the injury is “concrete and
particularized, actual or imminent, not hypothetical.” Id. at 304–05.

The injury pleaded in this case is
the loss of the opportunity to exercise the right of first refusal in the lease.
This injury was suffered by Voss Road Exxon but not by Thanos individually.
Although Thanos asserts that he was a guarantor under the lease, the contract
establishes that the right of first refusal belonged to Voss Road Exxon alone.
When the injury alleged is to a corporate entity, claims arising out of the
injury belong to the entity and not to individual owners like Thanos. See Wingate v. Hajdik, 795 S.W.2d 717,
719 (Tex. 1990) (holding that owner could not sue individually on cause of
action belonging to corporation, even if owner was indirectly injured by wrong
done to corporation); El T. Mexican
Restaurants, Inc. v. Bacon, 921 S.W.2d 247, 251 (Tex. App.—Houston [1st
Dist.] 1995, writ denied). Because
Thanos did not suffer the injury alleged, he lacks standing to pursue the claims
pleaded against Jackson Walker. 

B.      Waiver

          It is
undisputed that VRE’s right of first refusal lapsed before Thanos contacted
Jackson Walker. However, VRE contends that this right was revived through
“waiver,” treating this argument as an assertion of “the affirmative defense of
waiver.” The affirmative defense of waiver is not applicable here. A party may
waive a contractual right, and waiver can be asserted as an affirmative defense
against a party seeking to enforce a contractual right after the party
intentionally relinquished the right or engaged in conduct inconsistent with
enforcement of the right. Tenneco Inc. v.
Enter. Prods. Co., 925 S.W.2d 640, 643 (Tex. 1996). The contractual right at
issue in this case, however, is VRE’s own right of first refusal. No party is
seeking to enforce a contractual right against VRE, nor has any party pleaded affirmative
claims against VRE as to which it may assert an affirmative defense.

          To
the extent VRE argues that Reed waived compliance with the time limit on VRE’s
exercise of its right to first refusal, thus reviving the right of first
refusal, this argument also fails. Once triggered, a right of first refusal is
in the nature of an option contract: Reed’s
notice of a third-party offer was essentially an offer for VRE to purchase the
property under the same terms offered by the third-party, and VRE had a right
but not an obligation to accept the offer within the ten days during which Reed
was obligated to keep the offer open. See,
e.g., Holland v. Fleming, 728 S.W.2d 820, 822–23 (Tex. App.—Houston [1st Dist.]
1987, writ ref’d n.r.e.). Acceptance of an option must be unqualified,
unambiguous, and in strict compliance with the terms of the agreement; if the
agreement requires notice of intent to exercise the option within a specified
period, failure to give notice within the time specified is fatal. Comeaux
v. Suderman, 93 S.W.3d 215, 220 (Tex. App.—Houston [14th Dist.] 2002, no
pet.). “Accordingly, a failure to exercise an option according to its terms,
including untimely or defective acceptance, is simply ineffectual, and legally
amounts to nothing more than a rejection.” Id.
(citing Crown Constr. Co., Inc. v. Huddleston, 961 S.W.2d 552, 558 (Tex. App.—San Antonio 1997, no writ)). 

VRE’s right of first refusal, which
is provided for under a lease for a period of more than one year and pertains
to an agreement for the sale of real property, is governed by the statute of
frauds. See Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(4) (West 2009)
(requiring that contracts for lease of real property for more than one year or
for sale of real property be in writing and signed by party against whom it is
asserted); see also Williams v. Ellison,
493 S.W.2d 734, 736 (Tex. 1973); Reiland
v. Patrick Thomas Props., Inc., 213 S.W.3d 431, 438 (Tex. App.—Houston [1st
Dist.] 2006, pet. denied) (holding right of first refusal unenforceable where
it failed to satisfy statute of frauds). In certain circumstances oral
modification of a written contract will not violate the statute of frauds, and
this may include parol agreements to extend the time for performance. See Joiner v. Elrod, 716 S.W.2d 606, 609 (Tex. App.—Corpus Christi 1986, no
writ) (stating that a party may waive strict compliance with terms of
agreement, including time limits on acceptance of an offer, by oral agreement).
However, “[i]f a parol agreement to extend the time of an option contract is
entered into after the option has
expired, it is void and unenforceable.” Id.;
see also Shafer v. Gulliver, No. 14-09-00646-CV, 2010 WL 4545164, at
*7 (Tex. App.—Houston [14th Dist.] Nov. 12, 2010, no pet.) (“As an exception to the general rule against oral modification of contracts
covered by the statute of frauds, the parties to a written contract may agree
orally to extend the time of performance, so long as the oral agreement is made
before the expiration of the written agreement.”). This is
because an option is merely an offer by the optionor that does not bind the
optionee to any obligation; unless and until the option is exercised, there is
no bilateral contract. Luccia
v. Ross, 274 S.W.3d 140, 148–49
(Tex. App.—Houston [1st Dist.] 2008, pet. denied) (observing that, after option
has been exercised, “a contract exists” and parties “owe mutual and concurrent
obligations”); Riley, 808 S.W.2d at
188 (noting that option contracts have two components: an underlying contract
that is not binding until accepted and a covenant to hold open to optionee the
opportunity to accept). 

Thus, when the optionor has complied with its
obligations, as Reed did here, and the optionee has not exercised the option
within the specified time, as VRE failed to do here, there is no continuing
contractual obligation under the written contract to be modified by parol
agreement.[5] See Luccia, 274 S.W.3d at 148–49; Riley, 808 S.W.2d at 188; see also Kurio v. United States, 429 F.
Supp. 42, 64 (S.D. Tex. 1970) (rejecting offeror’s argument that it waived deadline
for acceptance of offer because once time period of offer expires, “there is no
power to accept” and “a belated attempt to accept . . . may well constitute a
counteroffer” but may never revive original offer). Even if VRE’s efforts to exercise the right of first refusal were
not legally ineffective for the reasons explained above, any oral modification
of the lease terms would be unenforceable due to a lease provision requiring
that any modification, amendment, or alteration be made only by an agreement in
writing. Of course, Reed was free to accept VRE’s offer to purchase the
property under the draft contracts after the expiration of its right of first
refusal, creating new contractual obligations between the parties, but the
summary judgment evidence establishes that she chose not to do so.

For these reasons, we conclude that the right of first
refusal was not revived by any alleged “waiver” by Reed of timely notice owed
to her by VRE in order to exercise the right of first refusal.

C.      Causation

 

In order to prevail on any of its
claims, VRE had to put forth evidence sufficient to raise an issue of fact as
to whether Jackson Walker’s alleged conduct was a cause-in-fact of VRE’s
injury. See Akin, Gump, Strauss, Hauer & Feld,
L.L.P. v. Nat’l Dev. & Research Corp., 299 S.W.3d 106, 112 (Tex. 2009) (“To prevail on a legal
malpractice claim, the plaintiff must prove the defendant owed the plaintiff a
duty, the defendant breached that duty, the breach proximately caused the plaintiff’s
injury, and the plaintiff suffered damages.”); Metro Allied Ins. Agency,
Inc. v. Lin, 304 S.W.3d 830, 835 (Tex. 2009) (observing that, to recover
under DTPA, claimant must show that alleged conduct was “producing cause” of
claimant’s injury, and “[b]oth  producing
cause and proximate cause contain the cause-in-fact element, which requires
that the defendant’s act be ‘a substantial factor in bringing about the injury
and without which the harm would not have occurred.’”) (quoting Doe v. Boys Clubs of Greater Dallas, 907 S.W.2d 472, 481 (Tex. 1995)); Gym–N–I Playgrounds, Inc. v. Snider, 220 S.W.3d 905, 914 (Tex.
2007) (observing that causation is essential element of claims for negligence,
gross negligence, violations of DTPA and fraud). 

The causation argument VRE makes here
is that the “Appellee’s actions were a proximate cause of Appellants’ damages
because the late notification of the [right of first refusal] was waived.” Because
we have concluded that the right of first refusal was not revived by waiver, we
reject VRE’s argument on this point. Because the right of first refusal expired
before any alleged involvement by Jackson Walker, we conclude that Jackson
Walker’s alleged conduct was not the cause in fact of VRE’s loss of its right
of first refusal. See Metro Allied Ins. Agency, 304 S.W.3d at 835 (holding that
element of cause in fact requires that defendant’s act be substantial factor in
bringing about injury, without which harm would not have occurred). VRE makes
no causation argument with respect to any injury separate and apart from the
loss of the right of first refusal.

Conclusion

For the reasons explained in this
opinion, the trial court correctly rendered summary judgment in favor of
Jackson Walker. Because we affirm the trial court’s judgment due to the absence
of any evidence showing that Jackson Walker caused VRE’s asserted injury, we do
not reach the other grounds upon which the trial court may have granted summary
judgment. Accordingly, we affirm.

 

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Massengale.











[1]
          The provision states:

 

            So long as Lessee is not in material
default hereunder (a material default to include, without limitation, Lessee’s
failure to pay Base Rent hereunder or any other sums payable by Lessee
hereunder, irrespective if such failure is has [sic] been deferred or mitigated
by bankruptcy or insolvency proceedings), the Lessor hereby grants to Lessee
the right of first refusal to purchase during the Initial Term, in the name of
Lessee or Lessee’s nominee, the Premises for a purchase price upon terms and
conditions offered by a third-party that Lessor is willing to accept (an
“Offer”). Within seven (7) days of Lessor’s receipt of an Offer, the Lessor
shall give Lessee notice of such Offer, which notice shall (a) subject to any
confidentiality requirement in such offer, state the name and address of and  identity of the person making the Offer, (b)
set forth in reasonable detail, the terms of the proposed transaction, and (c)
contain a representation by Lessor that the Offer is, to the Lessor’s knowledge
and belief, the Offer is [sic] a bona fide Offer, that the terms of the Offer
as set forth in the notice are true and correct, and that the Lessor will
notify Lessee in the event that the terms of the Offer change or the Offer is
withdrawn. Lessee’s right of first refusal to purchase the Premises at the
price and on the terms of such Offer may be exercised by giving Lessor notice
of such exercise (“Notification of Exercise”) within ten (10) days after Lessor
gives Lesseee proper notice of such Offer. . . . In the event Lessee does not
exercise its right of first refusal within the time permitted, Lessor shall be
permitted to sell the Premises in accordance with the terms communicated to
Lessee, free and clear of any further right of refusal, but subject to the
remaining Initial Term of the Lease, if any. . . .

 





[2]
          Leavitt was employed by
Apartment Realty Advisors, where he worked with Matthew Rotan, a partner at
Apartment Realty Advisors. Rotan is also a partner with Southwest Investments,
the third-party that had offered to purchase the property. Rotan approached
Reed about purchasing the property through Leavitt. A number of people referred
to Leavitt as Reed’s broker for the transaction. Harrison stated that she
viewed Leavitt as her co-counsel on the matter.

 





[3]
          The record contains a proposed
purchase and sale agreement between Reed and Southwest Investment Company that
includes a mixture of these terms: the purchase price is $1,800,000 but the
$15,000 payment entitles the buyer to only a twenty-day extension of the
inspection period. This agreement is signed by H. Dean Lane on behalf of
Southwest Investments, but it is not signed by Reed.

 





[4]
          Reed and VRE had a preexisting
indemnity agreement in connection with the lease, which Jackson Walker
contended made these provisions unnecessary.

 





[5]
          Gallop v. Seagoville Investments, Inc., relied on by VRE, is not contrary to
this holding. 417 S.W.2d 727, 728–29 (Tex. Civ. App.—Dallas 1967, writ ref’d
n.r.e.). In Gallop, the optionee
exercised his option to purchase timely but did so verbally instead of in
writing. Id. The optionor’s
representative accepted the verbal notice. Id.
The court then recognized a question of fact as to whether the
representative had authority to accept the verbal exercise of the option on
behalf of the bank, thus waiving the requirement that acceptance be in writing.
Id.